R. N. MONCRIEF, ADMINISTRATOR, APPELLANT, V. INTER-STATE TRANSIT LINES, APPELLEE.

FILED MAY 24, 1935. No. 29215.

*Ted R. Frogge* and *York & York*, for appellant.

*Thomas W. Bockes, James T. Keefe, T. M. Hewitt* and *T. F. Hamer, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is an action for damages brought by Moncrief, as administrator of the estate of Edna M. Woolard, deceased, against the Interstate Transit Lines, a Nebraska corporation, engaged in operating a line of buses through Dawson county, Nebraska, as a common carrier. Plaintiff seeks a recovery under sections 30-809 and 30-810, Comp. St. 1929 (Lord Campbell's Act), for the death of his intestate, occasioned by injuries suffered by her in a collision occurring on September 12, 1932, between an automobile then operated by the deceased and a bus then owned and operated by the defendant company. This collision concededly took place at the intersection of Thirteenth and Washington streets in the city of Lexington, Nebraska, and plaintiff alleges it was caused solely by the careless, negligent and unlawful operation of the defendant's bus by its driver and agent, and without fault or negligence on part of Edna M. Woolard. The defendant admits the occurrence of the accident at the time and place alleged, and that Edna M. Woolard died from injuries suffered in this collision; denies the allegations of negligence made in the petition, and pleads contributory negligence as an affirmative defense. To the answer plaintiff replied by way of a general denial. On these issues a trial was commenced before a jury, and at the close of the plaintiff's evidence the defendant moved the court for a directed verdict in its favor, "for the reason that the evidence offered is not sufficient to sustain a verdict against it." This motion the trial court sustained, and from the order of that court overruling his motion for a new trial, plaintiff appeals.

A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every in-

ference that can reasonably be deduced from the facts in evidence. *Schmelzel v. Leecy,* 104 Neb. 672; *Boomer v. Lancaster County,* 115 Neb. 295; *La Fleur v. Poesch,* 126 Neb. 263; *Bainter v. Appel,* 124 Neb. 40.

In *Boomer v. Lancaster County,* 115 Neb. 295, this court held: "Where from the facts and circumstances proved reasonable minds might draw different conclusions concerning the negligence or lack of negligence of the respective parties, it is error to sustain a motion for an instructed verdict."

Again, in *Casey v. Ford Motor Co.,* 108 Neb. 352, we held: "Where different minds may reasonably draw diverse conclusions from the same facts as to whether or not they establish negligence or contributory negligence, those issues must be submitted to the jury."

See, also, *Vorce v. Independent Telephone Co.,* 86 Neb. 27; *Sgroi v. Yellow Cab & Baggage Co.,* 124 Neb. 525; *Swengil v. Martin,* 125 Neb. 745; *McDonald v. Wright,* 125 Neb. 871.

It is an admitted fact that the death of Edna M. Woolard resulted from a collision between a Ford touring car, of which the deceased was the driver, and a bus operated by the defendant as alleged. The impact between the motor vehicles took place in the intersection of Thirteenth and Washington streets in the residence district of the city of Lexington. Washington street was a federal and state highway constituting a portion of Highway No. 30, otherwise designated as the "Lincoln Highway." The block immediately south of this intersection was 400 feet in length. Looking northward from the intersection of Twelfth and Washington streets there was no obstruction to a clear view along the latter street, and indeed to the eastward thereof to a point some six feet east of the east stop button on Thirteenth street. The accident occurred in the daytime. Immediately preceding the fatal collision, the plaintiff's decedent was proceeding in her Ford touring car west along Thirteenth street, accompanied by a lady friend. She stopped her car within a few feet of the east stop button on Thirteenth street.

Defendant, in its brief, with reference to the movements and conduct of the deceased at this time, says: "From where she stood, with the front wheel of the Ford six feet behind the (east) stop button, she had to drive 27 feet * * * before the front wheels of her Ford cleared the (east) curb of Washington street."

It was 20 feet from the east curb line of Washington street to its center. The defendant's brief also concedes that the evidence is that the Ford started from this position east of this stop button and moved "slowly, very slowly," westward across the intersection. At this time defendant's bus driver was driving north on Washington street at from 40 to 45 miles an hour, and collided with the left side of the Ford and well towards its rear, at a time when the rear wheels of the Ford had arrived at a point approximately not more than 5 feet east of the center of Washington street and 7½ feet north of the center line of Thirteenth street. The impact crushed the left rear side of the Ford and also its left hind wheel, and drove the damaged Ford diagonally northwesterly across the intersection to the west boundary of Washington street some distance north of the intersection. The bus continued along Washington street after the collision, and was stopped in the center of that street some 50 or 75 feet north of the wreck of the Ford touring car.

It will be remembered that from the point where the Ford started, after coming to a full stop at the east stop button on Thirteenth street, it had covered 47 feet before it was intercepted by the oncoming bus. In passing over this distance it seems agreed that the Ford touring car traveled "slowly, very slowly." On the basis of an average speed of 5 miles an hour, this distance was covered in from 6½ to 8 seconds. On the other hand, defendant's bus was approaching from the south at the rate of from 40 to 45 miles an hour, or from 60 to 66 feet a second. On the basis assumed, the bus thus appears to be traveling approximately ten times faster than the Ford. It would follow that when the Ford stopped, before entering the intersection, and its driver glanced south along Washington

street, the bus was then from 400 to 530 feet distant. Remembering that the angle of sight was such as to render difficult to plaintiff's decedent the possibility of accurately judging the rate of speed of the bus, we find no reason for characterizing her action in continuing her journey across the intersection at this time as in any degree negligent.

We are not convinced that the evidence conclusively establishes that the plaintiff's decedent failed to properly look to the southward before driving into the intersection. The presumption is that no person deliberately places himself in a position of danger, and this court has held: "A motorist on a nonfavored street, having stopped as required by ordinance, and having looked to the right and left before entering an arterial highway and found the intersection clear of traffic, has a right, in proceeding to cross it, to assume that motorists on the arterial highway will likewise obey traffic regulations, exercise due care and, if necessary to prevent a collision, slacken their speed." *McCulley v. Anderson,* 119 Neb. 105. See, also, *Barrett v. Alamito Dairy Co.,* 105 Neb. 658.

The statutes in force at the time of the collision in the instant case limited lawful speed of motor vehicles on Washington street to 20 miles an hour. The physical facts disclosed in the case conclusively establish that, had the bus proceeded at a lawful speed, the collision would have been impossible, and its occurrence must therefore be deemed wholly due to the acts of defendant's driver.

Then, too, the undisputed evidence is that as the bus approached this intersection it swerved first to the left and then turned back to the right. As a result of this maneuver, the rear portion of the Ford touring car was struck by it, thus causing the death of plaintiff's intestate. At the time of this collision the physical facts testified to disclose that ample clearance existed between the rear end of the Ford touring car and the east curb line of Washington street for the passage of the bus. The law of the road applicable to the situation disclosed by this record, declared by this court, is:

"In this state, upon highways of sufficient width, except

upon one way streets, the driver of an automobile shall drive the same upon the right half of the highway, unless it is impracticable to travel on such side of the highway, and in crossing an intersection of highways shall likewise cause such vehicle to travel on the right half of the highway, unless such right half is obstructed or impassable." *Bainter v. Appel,* 124 Neb. 40.

It is equally obvious that, had the bus proceeded strictly as required by law, it would have passed in the rear of the Ford touring car without the possibility of injury to the latter. Indeed, even under the contentions as made by appellee in its brief, the conclusions as to the facts therein contained necessitate the consideration and application of the doctrine of the "last clear chance."

At all events, the rule in this jurisdiction is, as hereinbefore stated: "Where different minds may reasonably draw diverse conclusions from the same facts as to whether or not they establish negligence or contributory negligence, those issues must be submitted to the jury." *Casey v. Ford Motor Co.,* 108 Neb. 352. See, also, *Day v. Metropolitan Utilities District,* 115 Neb. 711.

It follows, therefore, that the order of the trial court sustaining the defendant's motion for an instructed verdict, and its judgment thereon, were erroneous, and the same are hereby reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.