FRANK JOHN KLINE, APPELLANT, V. METCALFE CONSTRUCTION COMPANY ET AL., APPELLEES.

19 N. W. 2d 693

FILED JULY 20, 1945. No. 31956.

John C. Mullen, Gerald M. Mullen, and Jean M. Johnson, for appellant.

Joseph T. Votava and Bert E. Church, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is a suit for damages for the loss of wages for the breach of a contract of employment. Trial was begun to a jury, and after both parties had rested motion of the defendants to discharge the jury and dismiss the case was sustained. Plaintiff appealed to this court.

The only assignments of error are that the decision of the court was contrary to the evidence and to the law, and that

the court erred in sustaining the motion of the defendants to dismiss the action.

The plaintiff, who had had some college training, had been an automobile salesman for ten or fifteen years, and in May, 1942, started to work as an auditor for United States government engineers, after he had passed a physical examination, and worked in such a position for about two months during the construction of the Mead ordnance plant by the same defendant companies.

Earl Moeller, who represented the defendants in all negotiations with the plaintiff in this case, testified that he first became acquainted with plaintiff at Cody, Wyoming, on the government project out there, at which time both of them were working for the United States engineers, but Moeller changed over from his job with the government engineers and accepted an important position as personnel manager for defendant companies on the Alcan Highway project from Edmonton, Canada, to Fairbanks, Alaska, while the plaintiff worked with the engineers at Scribner Airfield near Fremont.

The testimony shows that the plaintiff, in jobs at Mead, Cody and Scribner, was checking contracts and government orders, for the government required each item to be checked, instead of just taking the contractor's word for it. Earl Moeller, with whom he became intimately acquainted, had charge of the timekeeping department with the engineers at the Mead project and at Cody, Wyoming.

The evidence discloses that plaintiff wrote Moeller a letter on February 24, 1943, to Edmonton, addressing him as "Dear Earl", saying in brief in the letter, exhibit No. 1, that he would like to "come up on your job and be a small part of your big job". On February 25 Earl Moeller, personnel manager for the three defendants, answered the letter from Edmonton, on the letterhead of the defendant companies, being exhibit No. 2, addressing plaintiff as "Dear Frank", the last two paragraphs in said letter reading as follows:

"Now in regard to yourself. We could use a man of your

ability in our Personnel Department. It might be in Edmonton, Dawson Creek, or Whitehorse. I believe that you would fit into our picture very well as the job is not only to induct the laborers and assign them to their jobs, but it is also to keep them happy by insisting that suitable recreation facilities are provided and that the food is to their liking, and that they are assigned to foremen with whom they are satisfied. These are just some of the main points. Of course, you probably understand that this would not be a good place for people who get 'homesick'. * * *

"This is a wonderful climate up here and I know you would enjoy being here. We cannot offer you a job as long as you are with the Area Engineers but if you have a clear release this job would pay you $3600.00 plus your Sunday overtime. There would be about a ten per cent increase if you went up the road. I would like to hear from you again if you are interested and when you expect to be finished at Fremont."

Exhibit No. 3 is an answer from the plaintiff to Earl Moeller, personnel manager, beginning "Dear Earl", and. acknowledged receipt of the letter and said he was "tickled to death" to get it, that it "sure sounds swell". He then said that he had already given his resignation to the Area Engineer, and that it would be accepted without question as of March 15, and as that project was about completed it would not be "putting anyone in the hole" by plaintiff's leaving. The plaintiff testified that, by dating his resignation March 10, with 27 days of annual leave his connection would expire April 6.

Exhibit No. 4 is a copy of the resignation, addressed to Captain Richard E. Blore, Area Engineer, and reads: "I hereby tender my resignation from my position as Assistant Clerk, CAF-3, $1620 per annum effective at noon April 6, 1943 for the reason that I am to be employed by a Contractor in Edmonton, Canada." At the bottom of the resignation Captain Blore had placed the notation that it was "Forwarded with recommendation that the resignation be accepted without prejudice effective noon April 6, 1943 ex-

piration of accrued annual leave. This recommendation is based on the fact that the employee's services can be dispensed with and the resignation is without misconduct or delinquency on the part of the employee."

Exhibit No. 5 is a letter on behalf of the three defendants and signed by Earl Moeller, and said that there was some "heat on proselyting"; that the army engineers at Edmonton "take exception to many applications of persons previously employed by the United States Engineers" on defense projects, and said that it must be handled in a very diplomatic way. Exhibit No. 5 contained the sentences: "When you are ready to leave Lincoln wire me collect and we will wire a ticket to you. * * * Write me as soon as you can."

Exhibit No. 6 is the answer to exhibit No. 5, dated at Lincoln, Nebraska, March 30, 1943, and sets out the exact words of his resignation, closing with this sentence: "You say to wire you collect which I think this will answer the same purpose. If everything is satisfactory, wire ticket so that I can leave here April 5, 1943."

In response to exhibit No. 6, plaintiff received a telegram from the defendants, sent by Moeller, being exhibit No. 7, April 9, 1943, reading as follows:
"FRANK J. KLINE=
    "440 SOUTH 13=
"PICK UP TICKET AT CB & Q STATION YOU MUST SECURE DRAFT DEFERMENT IN DUPLICATE BIRTH CERTIFICATE HAVE UNITED STATES EMPLOYMENT CX SERVICE CARD NUMBER FIVE ZERO EIGHT AND CLEARANCE FROM WAR MANPOWER COMMISSION PROCEED TO STPAUL AND CHECK IN AT SIXTY THREE EAST SIXTH STREET FOR YOUR FINAL PHYSICAL EXAMINATION WITHOUT THIS FINAL PHYSICAL YOU CANNOT BE PLACED ON THE PAYROLL=
"METCALFE HAMILTON KANSAS CITY BRIDGE CO MOELLER EDMONTON CANADA. CB & Q CX."
Exhibit No. 8 was United States Employment Service

card, on required form No. 508, dated April 13, 1943, signed Benj. E. Ogden, Representative, by Barrett Castle, Supervising Interviewer.

Exhibit No. 9 is dated April 13, 1943, and is the draft deferment issued by the Local Selective Service Board No. 1, of Lancaster county, and authorizes the registrant to depart from the United States and to remain absent during the duration of his employment with defendant companies, to be engaged in defense construction. It sets out that the date of birth of the plaintiff was April 4, 1889. The plaintiff also secured his birth certificate, and had completed all of the detailed requirements and was ready to leave on April 14, 1943.

Exhibit No. 10 is a telegram addressed to plaintiff, sent by the defendant companies, by Erickson, received April 14, 1943, and reads as follows:
"FRANK J. KLINE=
"440 SOUTH 13 STREET
"LINCOLN NEBRASKA)=
"DUE TO CONDITIONS BEYOND OUR CONTROL WE ARE FORCED TO TEMPORARILY WITHDRAW OUR OFFER FOR EMPLOYMENT YOUR NAME WILL BE PLACED ON FILE AND SHOULD THE SITUATION CHANGE YOU WILL BE CONTACTED IMMEDIATELY=
"METCALFE HAMILTON KANSAS CITY BRIDGE CO ERICKSON.="
This man Erickson was employment agent of defendant companies at St. Paul, working under Moeller.

This was followed by a telegram, exhibit No. 11, from the defendant companies, signed "MOELLER EDMONTON CANADA," under date of April 18, and reading as follows:
"ORDERS FROM DIVISION STOPPING ALL IMPORTING OF PERSONNEL FROM THE STATES SORRY RETURN TICKET TO THIY OFFICE."

It appears that Moeller did not know that Erickson had sent the telegram, exhibit No. 10, when he sent exhibit No. 11, which was very natural, for he had 175 men working in

his own department at that time and eventually hired 7,000 employees, which required the sending of 20,000 to 40,000 letters and telegrams, and teletype connections were installed between the Edmonton and St. Paul offices, so Erickson at St. Paul had sent plaintiff the first wire.

The sole question involved in this case is whether the court erred in directing a verdict for the defendants and entering a judgment in their favor.

The answer is signed only by Joseph T. Votava, United States Attorney, and by Bert E. Church, who the evidence discloses is Major Bert E. Church, of the Judge Advocate General's Department, and is litigation officer of the Seventh Service Command.

In verification of the answer, "Joseph T. Votava, being first duly sworn, on oath deposes and says that he is the United States Attorney for the District of Nebraska, and as such one of the attorneys for the above-named defendants;" etc. This answer first admits that the various letters and telegrams hereinbefore set out were transmitted between the parties, but denies that there was any contract. The answer alleges that the work being performed by the defendants was for the United States Government in aid of war effort and under direction and control of the War Department and the Division Engineer of the United States army. This answer in effect sets forth the ultimate denial of liability on the part of the Government.

The answer charges that plaintiff never passed the physical examination at St. Paul. The evidence clearly shows that some months before plaintiff was required to and did pass a physical examination before he was accepted as a clerk in the Area Engineer's office. It might also be noted that the telegram of discharge reached him before he left Lincoln for St. Paul, Minnesota.

The answer further sets out that plaintiff delayed getting his permit from the local draft board and clearance from the United States Employment Service until April 13, 1943, but clearly appears that he had them before the telegrams attempting to discharge him were sent.

The fifth paragraph of the motion of defendants for a directed verdict charges that plaintiff did not receive a release or certificate authorizing him to take up this contract from the War Manpower Commission. However, exhibit No. 18 is a letter from the state War Manpower Director, J. R. Kinder, to Major Church, J.A.G.D., in answer to a letter from the Major seeking information which Mr. Kinder said could not be given out under administration policy, but the director does state: "We find from our records that Mr. Kline was released without prejudice and obtained the necessary clearance from this office."

It is further charged by the defendants that plaintiff did not receive a clear release from his former employer, the office of United States Engineers. The evidence does show that plaintiff immediately sent in his resignation, and that his superior officer, Captain Richard E. Blore, area engineer, recommended the same.

The defendant contends that further negotiations for employment of plaintiff were prevented by superior authority making an impossibility of performance, which under the law excused defendants; in plain language, that a "freeze order" had been issued against defendants' hiring this plaintiff. To support this assertion, the defendants rely in their brief upon order No. 904, issued by the chairman of the War Manpower Commission, under date of April 16, 1943, restricting the transfer of workers from essential activities, as found in Vol. 8, No. 77, of the Federal Register.

Paragraph 904.4 thereof appears to allow any employer engaged in an essential activity to hire a new employee who was, during the preceding 30-day period, engaged in an essential activity, without regard to his wage, provided such hiring is approved by the War Manpower Commission, with certain conditions, none of which appear to be violated by the transfer of the plaintiff from one essential activity to another, for Captain Blore's recommendation shows that plaintiff's services could be dispensed with in the position in which he was then engaged.

Section 904.8 reads as follows: "Nothing in this regula-

tion shall be construed to prejudice existing rights of an employee under any agreement with his employer."

Without determining whether or not judicial notice must be taken of this order of the War Manpower Commission, as found in this Federal Register, an examination of it reveals that it did not take effect until April 18, 1943, a date subsequent to the abrogation of the purported contract in question.

It appears to this court that, if a contract had been established between the plaintiff and the defendants as of the date April 14, 1943, as this "freeze order" took effect on April 18, 1943, the rights of the plaintiff would not be prejudiced by it.

The so-called "freeze order" remained in effect for only a couple of days as to common labor, and while it was on a little longer as to office personnel, such as the plaintiff, yet within a short time it was lifted as to those employees also.

In this record appears the decision of the trial court in sustaining the motion for a directed verdict. Briefly, we will refer to several statements therein. The lower court said that the fact that plaintiff went back to work for the engineers on May 1 thereafter shows he did not have a release and "It seems to me that closes that issue. * * * Now it is purely speculative as to whether or not this plaintiff would have stayed on the job had he gone up there. * * * the measure of damages would be too speculative for any Court to allow a jury to dwell on it. I think the motion is good."

In this case it is very evident that many of the issues involved are highly controverted. The plaintiff produces evidence that, so far as lay within his power, he complied with every requirement made by defendants to secure the position they had offered him. The defendants deny this.

When, from the facts and circumstances proved, reasonable minds might draw different conclusions, should the issues not be submitted to a jury under proper instructions?

This court has said: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence

submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163. See, also, *Grantham v. Watson Bros. Transportation Co.,* 142 Neb. 362, 6 N. W. 2d 372.

" * * * it is error for the trial court to direct a verdict for either of the parties on an issue of fact on which the evidence is conflicting * * * ." *Stoffel v. Metcalfe Construction Co.,* 145 Neb. 450, 17 N. W. 2d 3.

In our opinion, the trial court was in error in sustaining the motion to discharge the jury and dismissing the action of plaintiff.

REVERSED.