RAY HALLIDAY, APPELLANT, v. W. B. RAYMOND, APPELLEE.
22 N. W. 2d 614
FILED APRIL 19, 1946. No. 32040.

*Warren C. Schrempp* and *Jack A. Thorpe,* for appellant.
*Wear, Boland & Nye,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Ray Halliday, as plaintiff, brought this action in the district court for Douglas County against Wallace B. Raymond, as defendant. The purpose of the action is to recover damages for personal injuries arising out of an accident that happened on October 7, 1944, at the intersection of Fifteenth and Dodge Streets in the city of Omaha, Nebraska. From an order sustaining the defendant's motion for a directed verdict and dismissing his action, after motion for a new trial had been overruled, the plaintiff appeals.

Appellant and appellee will respectively be referred to as plaintiff and defendant.

In view of the manner in which the action was disposed of, we must apply the following rule in reviewing the record: "'A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence.' Moncrief v. Interstate Transit Lines, 129 Neb. 168, 261 N. W. 163. See, also, Grantham v. Watson Bros. Transportation Co., 142 Neb. 362, 6 N. W. 2d 372." Kline v. Metcalfe Const. Co., 146 Neb. 389, 19 N. W. 2d 693. And, from the application of the above rule, determine which part of the following rule is applicable: " * * * where different minds may draw different conclusions from the evi-

dence in regard to negligence, the question should be submitted to the jury, but where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant. Sindelar v. Hord Grain Co., 116 Neb. 776, 219 N. W. 145." Whittaker v. Hanifin, 138 Neb. 18, 291 N. W. 723.

The Municipal Code of the City of Omaha in force at the time provided as follows:

"The driver of any vehicle shall yield the right-of-way to a pedestrian crossing the street within any marked crosswalk or within any unmarked crosswalk at the end of a block, except at intersections where the movement of traffic is being regulated by police officers." § 55-4.1, art. IV, Municipal Code of the City of Omaha.

"On streets where traffic at intersections is controlled by traffic control signals, pedestrians shall not cross a street against a red signal and shall not cross at any place except in a marked or unmarked crosswalk. A pedestrian crossing or starting across any such crosswalk on a green signal shall have the right-of-way over all vehicles, including those making turns, until such pedestrian has reached the opposite curb or a safety zone. It shall be unlawful for the operator of any vehicle to fail to yield the right-of-way to any such pedestrians." § 55-4.2, art. IV, Municipal Code of the City of Omaha.

The intersection here involved has 100-foot streets consisting of 20-foot walks on each side and a 60-foot surfaced thoroughfare between the sidewalk curbs. The walks on each side are extended across the thoroughfare by a marked crosswalk of the same width. Each corner has a traffic signal consisting of green, amber, and red lights and both pedestrian and automobile traffic are controlled thereby. There is a marked center line down the middle of the thoroughfare of both Fifteenth and Dodge Streets.

Plaintiff testified that the afternoon of October 7, 1944, was warm and bright; that at about 3:30 p.m. he, as a

pedestrian, arrived at the southwest corner of Fifteenth and Dodge Streets with the purpose of going north on the west side of Fifteenth Street; and that he observed the traffic signal for going in that direction was red and so temporarily waited at the curb near the west side of the crosswalk until the light had changed.

Other evidence shows that defendant was driving his car north on Fifteenth Street at the same time and because of the red signal brought his car to a stop just to the right of the center line of Fifteenth Street at the south side of the intersection.

Plaintiff further testified that when the traffic light changed to green so that traffic could proceed north and south that he, and the other pedestrians waiting at the curb, proceeded to go across; that he traveled in but near the west side of the crosswalk; that as he left the curb he looked both east and west and did so several times while crossing; that his eyesight was good and his vision unobstructed but he saw no cars in either direction; and that his hearing was good but he heard no sound of a horn.

He further testified that suddenly his feet were knocked out from under him and as he was in the air he tried to grab the fender over the wheel but it was smooth and he could not catch hold; that his next recollection was that he was lying on the pavement just north of the center line of Dodge Street and the defendant's car was directly in front of him; that the car was standing at an angle with the left front wheel at about the west side of the crosswalk but about three feet north of the center line of Dodge Street while the left rear wheel was within the crosswalk and on the center line of Dodge Street thus placing the car in a southeast to northwest traveling alignment.

The plaintiff's position on the pavement with reference to the car shows he was lying about one foot from the car but parallel to it with his feet about one foot behind the left front wheel.

When he stood up to talk with the defendant, who was sitting at the wheel of his car, he placed his weight on his

right foot and had pain therein; that his right leg, beginning at a point halfway between the knee and ankle and extending to the ankle, had a tire or rub burn about one-half inch in width; and that the right trouser leg from just below the knee had dust marks that were "square, oblong shape, with lines between" that looked very much like the tread of a tire.

Of course, "Negligence is never presumed, and cannot be inferred from the mere fact that an accident happened. Anderson v. Interstate Transit Lines, 129 Neb. 612, 262 N. W. 445; Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Engel v. Chicago, B. & Q. R. Co., 111 Neb. 21, 195 N. W. 523; Thompson v. Young Men's Christian Ass'n, 122 Neb. 843, 241 N. W. 565; Meyers v. Neeld, 137 Neb. 428, 289 N. W. 797." Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533.

In this case the evidence upon which the plaintiff relies to establish his cause of action and overcome the direct evidence of the defendant is to a large extent circumstantial. Nnder this situation circumstantial evidence can be sufficient to sustain a verdict depending solely thereon for support if the circumstances proved by the evidence are of such a nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom. Bixby v. Ayers, *supra;* Anderson v. Interstate Transit Lines, 129 Neb. 612, 262 N. W. 445.

It is a fair and reasonable deduction from the plaintiff's failure to see the defendant's car on the several occasions that he looked to the east, his failure to hear any horn sounded, the sudden knockdown of the plaintiff and his attempt to grab the fender of the car, his position on the street after he was knocked down, the angle of the defendant's car after it had stopped, the injury to the right leg in the manner described, and the nature of the imprints on the right trouser leg, that the defendant, after stopping his car at the intersection, proceeded to cut across the intersection and without warning ran into and against the plaintiff from the right rear hitting the plaintiff's right leg

with his left front tire.

If the jury found the accident did so happen then the defendant, under the situation, would be guilty of negligence which was the proximate cause of the accident. Under the provisions of the municipal code hereinbefore set out the plaintiff had the right-of-way and "It is the duty of the driver of an automobile to exercise reasonable care in its operation, and where pedestrians are numerous and traffic is congested, the degree of care required must be commensurate with the danger reasonably to be anticipated." Christoffersen v. Weir, 110 Neb. 390, 193 N. W. 922.

The defendant and his stepdaughter, who was riding with him, present a different picture. They testified that after stopping for the red signal, as they traveled north on Fifteenth Street just east of the center line, they again proceeded when the light turned green; that defendant drove north to the center of the intersection and then turned west north of the center line of Dodge Street; that before turning he gave a hand signal of his intention to turn and, as they turned, he sounded his horn; that they observed the plaintiff as he left the curb and that he was looking to the west up Dodge Street and never looked to the east; that defendant again honked his horn somewhere between the center of the intersection and the crosswalk; that defendant was driving in low gear at about four miles an hour; that as the pedestrians left the curb the plaintiff seemed to shoot out ahead of the others; that as the car entered the crosswalk the defendant observed that the plaintiff did not see his car so he stopped his car and honked his horn; that the plaintiff, who was some three or four feet away from the car when it stopped, walked into it; and that he was not knocked down but jumped back and remained standing.

Upon this record reasonable minds can differ as to the manner in which the accident happened and it presents a question of fact for the jury unless it can be said that under this evidence the plaintiff, as a matter of law, is guilty

of such contributory negligence as would defeat his recovery.

In Belville v. Bondesson, 130 Neb. 926, 266 N. W. 901, we described what any ordinary prudent man would do when crossing an intersection as follows: "In examining the question of plaintiff's contributory negligence, it is necessary for us to formulate some idea as to what an ordinarily cautious and prudent man would do under like circumstances. We think he would act about as follows: On reaching the intersection, he would look both to his right and to his left. Seeing that no cars were coming from the right that would endanger him before reaching the center of the street and determining that he could safely cross in front of cars coming from his left, he would proceed, being watchful of the cars whose traffic lanes he was crossing. Arriving in the center of the street, he would devote the greater part of his attention to cars coming from the south whose traffic lanes he would cross in reaching the other side of the street, being alert, however, at all times, to the possibility that a car might appear where normally it would not be expected."

In Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790, after quoting the above we went on to say: "Here the deceased looked neither to the right nor the left after starting to cross the street; he was not 'watchful of the cars whose traffic lanes he was crossing' nor did he at the center of the street 'devote the greater part of his attention to cars coming from the south.' In short, he did not do the things that 'an ordinarily cautious and prudent man would do under like circumstances.'" We therein stated the following rule: "When one, being in a place of safety, sees or could have seen the approach of a moving vehicle in close proximity to him and suddenly moves from the place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence more than slight in degree, as a matter of law and precludes recovery." However, as stated in Travinsky v. Omaha & C. B. Street R. Co., 137 Neb. 168, 288

N. W. 512: "The negligence does not arise from the single circumstance of whether the pedestrian looks or does not look. The determining element in this type of case is the sudden movement into the path of the vehicle followed by almost instantaneous collision."

Therefore, if the plaintiff saw or should have seen the defendant's car and then suddenly either walked into its path or into it, the above rule would apply. See Leonard v. Trimble, 133 Neb. 254, 274 N. W. 593.

We have said that an ordinarily cautious and prudent man would look to the right and left in crossing an intersection to observe cars coming from either direction. Likewise, we have said: "He had the right to assume that vehicles approaching from the rear would exercise ordinary care in keeping a lookout for him. He was under no duty to maintain a lookout to the rear to avoid a charge of negligence. Brenning v. Remington, 136 Neb. 883, 287 N. W. 776; Nichols v. Havlat, 140 Neb. 723, 1 N. W. (2d) 829." Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114.

As to what the duty of the plaintiff was at the time of crossing the intersection with reference to looking back to his right rear to observe if any cars were coming up Fifteenth Street and cutting across the intersection to go west on Dodge Street, we think the following language from Bruce v. Cohn, 172 Minn. 386, 215 N. W. 520, applicable: "Therefore, cases involving accidents to pedestrians coming into collision with machines traversing a route at right angles to that of the pedestrian are not especially pertinent and certainly not controlling. * * * On the other hand, cases involving the running down of pedestrians lawfully upon a highway by a machine coming from the rear of the injured person are persuasive."

We approve the following from Gable v. Field, 189 Wash. 526, 66 P. 2d 356: "Appellant testified that, after reaching the safety island, she waited until she heard the second traffic bell, and looked up and saw the light was green; that, as she stepped out of the island, she looked to the right

and to the left, she said repeatedly, and there was no car in sight, and that she did not see the automobile until she was actually struck. There is no claim that she looked to the rear for traffic on the same street going in the same direction she intended to, and did, go. * * * It is never the duty of a pedestrian, who has obeyed the legal traffic signals and entered a lawful pedestrian cross walk in a street intersection, who has looked to the right and left, to also look to the rear. She had the right of way across. As to such well defined crossings, the burden is placed by statute and ordinances upon the motorist. In this case, appellant, the pedestrian, had certainly complied with the law and taken proper precautions for her own safety."

And as further stated therein: "Nor is the situation here like that in Silverstein v. Adams, 134 Wash. 430, 235 Pac. 784, Steinheim v. Nicholas, 171 Wash. 614, 18 P. (2d) 836, and other similar cases where pedestrians were struck by cars coming from one side or the other, which no one having their faculties could do other than see had they looked.

"Appellant obeyed the traffic signals and was where she had a right to be. Modern cars are swift and silent, capable of gliding without warning from the 'right rear' upon unsuspecting pedestrians. The burden is upon motorists to use greater care to avoid injury to pedestrians who have complied with the law and secured the lawful right of way. These were questions of fact for the jury under proper instructions, * * *."

Under the evidence the question of the defendant's negligence and the contributory negligence of the plaintiff, if any, were proper questions of fact for the jury and should have been submitted to them.

REVERSED AND REMANDED.