MELVIN THOMAS, APPELLANT, V. ORA E. POULSON ET AL., APPELLEES.

30 N. W. 2d 59

Filed December 12, 1947.    No. 32235.

*Van Pelt, Marti & O'Gara, Sam C. Zimmerman* and *Perry & Perry,* for appellant.

*Rosewater, Mecham, Shackelford & Stoehr* and *Alfred D. Raun,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and THOMSEN, District Judge.

WENKE, J.

Melvin Thomas, as plaintiff, brought this action in the district court for Cass County against Ora E. Poulson and Lowell E. Stubbs, as defendants. The purpose of the action is to recover damages arising out of an accident that happened on June 30, 1945, on Highway No. 6 at a point about one and one-half miles northeast of Greenwood in Cass County. From an order sustaining the defendants' motion for a directed verdict, motion for new trial having been overruled, the plaintiff appeals.

In view of the manner in which the action was disposed of we apply the following rule in reviewing the record: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Moncrief v. Interstate Transit Lines, 129 Neb. 168, 261 N. W. 163. See, also, Grantham v. Watson Bros. Transportation Co., 142 Neb. 362, 6 N. W. 2d 372; Kline v. Metcalfe Construction Co., 146 Neb. 389, 19 N. W. 2d 693; Halliday v. Raymond, 147 Neb. 179, 22 N. W. 2d 614.

And, from the application of the foregoing rule, determine which part of the following rule is applicable: "* * * where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury, but where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant. Sindelar v. Hord Grain Co., 116 Neb. 776, 219 N. W. 145." Whittaker v. Hanifin, 138 Neb. 18, 291 N. W. 723. See, also, Finegold v. Union Outfit-

ting Co., 110 Neb. 202, 193 N. W. 331; Halliday v. Raymond, *supra*.

As stated in Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902:

" 'In a law action it is error for the trial court to direct a verdict for either of the parties on an issue of fact on which the evidence is conflicting. Such issue should be submitted to the jury for their determination.' Stoffel v. Metcalfe Construction Co., 145 Neb. 450, 17 N. W. 2d 3.

" ' "Where evidence is in conflict and such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are for the determination of the jury." Parks v. Metz, 140 Neb. 235, 299 N. W. 643.' Grantham v. Watson Brothers Transportation Co., *supra*."

The following facts are either stipulated or established by undisputed evidence: That appellant, who lives at Ashland and engaged in the gravel business, was the owner of the 1941 Ford one and one-half ton truck which was involved in the accident; that at the time of the accident the truck was being driven by his employee, Hubert Felkie, who was instantly killed in the accident; that the truck was used in appellant's business to haul gravel and at the time had been loaded with gravel at appellant's gravel pit some five miles north of Ashland; that appellee Poulson, who lives at Elm Creek and engaged in the business of transporting gasoline, was the owner of the transport which was involved in the accident; that the transport consisted of a 1945 White tractor and a 1940 Freuhauf trailer, the latter having a capacity of 4,440 gallons and empty at the time; that appellee Stubbs was driving it from Kearney to Omaha to get a load of gasoline; and that Stubbs was an employee of Poulson.

The accident occurred on the morning of June 30, 1945, sometime between 7:30 and 8 a. m. on the east end or just east of a bridge on Highway No. 6 at a point

approximately one and one-half miles northeast of Greenwood. At the time of the accident it was foggy and raining. Felkie was driving appellant's truck in a southwesterly direction on the highway, that is, toward Lincoln, when the accident occurred. Stubbs, at the time, was driving the transport in a northeasterly direction toward Omaha. The truck was loaded with gravel and had an over-all weight of about 39,000 pounds, while the transport was empty and the empty trailer, exclusive of the tractor, had a weight of about 6,400 pounds.

It will be observed from what has already been said that the highway, at the place of the accident, follows a northeasterly and southwesterly course but, for convenience in stating the facts and possibly a better understanding thereof, it will be considered and referred to as if it ran east and west, that is, the east being toward Omaha and the west toward Lincoln.

After the accident the truck was on the bridge facing in a southwesterly direction with its front end against the south curb and guardrail. The front end was some 16 to 25 feet from the east end of the bridge. The back of the truck extended out as far as and a little across the center line of the bridge. The left front of the motor and cab were severely smashed, including the left front of the bumper and left fender. Likewise the left front of the steel body had been hit. The driver was found in the cab. Apparently he was instantly killed.

The tractor unit of the transport stopped about 100 to 125 feet east of the east end of the bridge. It was in the ditch and close to the highway fence and approximately parallel thereto. This fence is about 25 feet from the highway. The tractor was facing east and its tracks show that it left the pavement at an angle and continued until it was stopped by Stubbs, the driver. Stubbs had not been severely injured by the accident. The outer tire and flange of the rear left dual wheel of the tractor had been hit. Parts of the fifth wheel,

the means by which the trailer is attached to the tractor, were still on the frame thereof.

The trailer and tractor were separated by the impact and part of the fifth wheel remained on the tractor, part on the trailer, and part was found on or near the highway where the accident occurred.

After the accident the trailer was in the ditch just south of the paved highway and east of the cement abutment at the east approach to the bridge. It was approximately at right angles to the highway with its front end resting on the shoulder and its rear in the ditch just east of the cement abutment. Witnesses estimated the front end thereof to be from 2 to 8 feet from the pavement and 15 to 24 feet from the east end of the bridge. The trailer was severely damaged in the left front part of the tank. It was torn loose from the tractor, to which it had been attached by a fifth wheel. Parts of this damaged fifth wheel were still attached to the trailer. The tank part of the trailer had buckled up about a third of the way down from the front. The only evidence of tracks made by the rear wheels of the trailer are for a distance of some two or three feet just before it came to a stop.

Immediately following and shortly after the accident debris from the truck and transport was observed by several witnesses. It was located on the north half of the highway as far as 75 feet east of the bridge. The principal items thereof were located in the area from 30 to 75 feet east thereof. These items consisted of gravel, a booster of a vacuum tank brake, part of a rear view mirror, parts of a battery, pieces of chain, part of a bumper, pieces of glass, parts of a vacuum tank, parts of a fender, part of a headlight, flares, part of a door handle and latch, and parts of a grill. The shaft from the fifth wheel, a piece of metal between two and one-half and three feet long and one and one-half inches in diameter was observed just north of the highway and about 85 feet east of the bridge.

Further detailed facts could be set out but would serve no useful purpose for from the facts already set forth, and the fair and reasonable inferences to be drawn therefrom, the jury could properly find that the collision occurred on the north half of the surfaced highway just east of the bridge at a time when the tractor part of the transport was turning to the right leaving the left rear thereof and the left front of the tank part of the trailer in an exposed position on its, the transport's, wrong side of the road.

Appellees, in their brief, after discussing the facts make the following statement: "From these facts, and the further fact that the bridge railing for a distance approximately equal to the length of the trailer was bent outward and the posts broken, only one conclusion is possible, namely, that the front portion of the gravel truck (left wheel and motor) struck the trailer at an angle near the point where the tank buckled, went under it and lifted it almost high enough to clear the bridge railing, and that the projecting corner of the dump box of the truck struck the end of the tank and threw the whole trailer around to the right, against and over the bridge railing, wrenching it loose from the tractor."

In view of appellee Stubbs' statement that the collision occurred before the tractor was off the bridge it is difficult for the writer of this opinion to understand how, after the transport got up in the air and then south over the guardrail, the top of which is 40 inches above the surface of the bridge, it could then change its direction and travel east for its full length of 26 feet and then across the cement abutment to the east approach of the bridge, a total distance of approximately 40 feet. Neither does it seem possible that after it had traveled this distance and then landed upright in the ditch that it could do so without leaving some evidence that it had landed in the ditch sideways. Nor

does the nature of the injuries to the trailer and truck seem to support this theory.

But whether or not the accident happened in that manner we are not here called upon to decide as that is a question for the jury.

Appellees often refer to the testimony of appellee Stubbs as undisputed and unimpeached. We do not find that the record will sustain the first and the second is true only because the trial court, by erroneous rulings, prevented appellant from impeaching this witness. There is evidence introduced by appellant of admissions by Stubbs immediately after the accident and later in his deposition which are in conflict with the evidence he gave at the time of trial. While the trial court, in admitting this evidence, properly limited it to the appellee Stubbs it nevertheless is in conflict with some of his evidence at the time of trial. As to impeachment the record shows that the appellant attempted to do so when Stubbs testified. However, the trial court erroneously prevented appellant from doing so. It is proper to impeach a witness who is testifying by showing that he has made previous statements which are contradictory to what he is presently testifying to as the facts.

We find that the fact situation in this case brings it within our recent holdings in Halliday v. Raymond, *supra,* and Gutoski v. Herman, *supra.* It presents a jury question.

Appellant makes complaint of the trial court's rulings whereby admissible evidence was excluded. Also that he was unduly limited in his cross-examination of appellees' witnesses to the extent that there was an abuse of the court's discretion. Both of these contentions are meritorious. But, in view of our reversing the case for retrial, they will not be discussed because they may not recur on the next trial.

REVERSED AND REMANDED.