Leslie J. HUTCHINSON, Appellant,

v.

Raymond Chris FOUTS, Administrator with Will annexed of the Estate of Doris (Cozad) Lorraine Fouts, Deceased, Appellee.

Leslie J. HUTCHINSON, Appellant,

v.

Raymond Chris FOUTS, Administrator of the Estate of Nancy Fouts, Deceased, Appellee.

Nos. 17900, 17901.

United States Court of Appeals
Eighth Circuit.

Aug. 24, 1965.

Robert G. Fraser, of Fraser, Stryker, Marshall & Veach, Omaha, Neb., made argument for appellant and filed brief with Thomas Marshall and James A. Buckley, Omaha, Neb.

Donald P. Lay, of Eisenstatt, Lay, Higgins & Miller, Omaha, Neb., made argument for appellee and filed brief with Walter H. Smith, of Smith & Lebens, Plattsmouth, Neb.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

These two diversity cases arose out of a tragic automobile accident occurring on March 16, 1962, about 1:30 p. m. on U. S. Highway 75–73–34 some seven miles south of Plattsmouth, Nebraska. In the accident a 1961 Comet station wagon, driven by Doris Fouts, collided with the rear of appellant's 1960 International two-ton tank wagon truck. Mrs. Fouts and her daughter Nancy, a passenger in the front seat, were killed. Actions for both deaths on behalf of the next of kin were instituted by Raymond Chris Fouts, the widower of Doris and the father of Nancy, as administrator of decedents' estates. In a consolidated trial plaintiff received jury verdicts and judgments of $33,773.16 for Doris' death and $6,128.57 for Nancy's death. Defendant appeals in both cases after the issuance of orders denying motions for judgment notwithstanding the verdict or for a new trial.

The facts as disclosed by the record indicate that the accident took place on U. S. Highway 75–73–34 between Plattsmouth, Nebraska, and Nebraska City, Nebraska. The highway at the point of the accident is a concrete paving 24 feet in width. The speed limit at that point is 65 miles per hour. The accident site lies between two hills separated by a fairly flat valley. The hill at the north starts a descent which is approximately a 51-foot drop in 1700 horizontal feet. The highway then flattens out for the next 800 feet before it again rises, forming what is described as a valley. At the time of the accident the weather was clear and sunny, but there were patches of previously fallen snow in surrounding fields, on the highway shoulders, and in the ditches. The substantially level shoulders of the highway were somewhat muddy but were apparently accessible for automobiles and trucks to drive upon. From the north hill to the point of accident there are three driveways on the west side and one driveway on the east side of the highway.

Just before 1:20 p. m. on the afternoon of the accident appellant, Leslie J. Hutchinson, driving his 1960 truck south on the highway, heard a "sudden clang noise", indicating motor trouble as he was cresting or starting to descend the north hill some distance north of the first driveway on the west side of the highway. When the motor was torn down subsequent to the accident it was discovered that a valve head had broken off and had gone through the cylinder head. This created a hole through which antifreeze liquid and water passed into the combustion chamber where a spark plug ignited it, causing a kind of bluish-gray smoke or fog to emit from Hutchinson's vehicle. Hutchinson, driving about 45 to 50 miles per hour, saw the smoke coming out of the back end of his truck when he looked out of the rear view mirror. He stated at this time there was a lot of smoke covering about one-half of the highway behind his truck. Hutchinson removed his foot from the accelerator and allowed the truck to coast down the hill. He did not attempt to bring it to a stop or to turn off onto the shoulder or into any of the driveways along the highway. The amount of smoke emitting from the truck decreased when he ceased accelerating. When he got to the flat part of the highway or valley bottom, he stepped on the accelerator in order to maintain his speed. He noticed that the smoke again became very heavy upon acceleration. The smoke was quite close to the truck. Even though Hutchinson was familiar with the road, the driveways, and the shoulders, he continued on the highway with his obviously disabled motor emitting the dense smoke which then covered both lanes of the highway. He hoped to get to a service station at Murray Corner, an intersection atop the next hill south and about three-tenths of a mile from the scene of the accident or approximately eight-tenths of a mile from a point when he first knew of the dense smoke emitting from his truck. He continued traveling in such fashion

until such time as he felt a swaying motion of his truck. He then pulled to the side on the shoulder, going a distance of approximately 70 feet after he felt the swaying motion. Prior to this Hutchinson had made no attempt to get off the highway, to light the rear of his truck, or in any way to signal an indication of danger to vehicles coming from his rear.

Just prior to the accident Doris Fouts, accompanied by her three daughters, was driving the Fouts 1961 station wagon in a southerly direction on the highway somewhere behind Hutchinson's vehicle. No one saw the actual collision, resulting in the deaths of Doris and Nancy, but the station wagon obviously crashed into the rear of Hutchinson's truck, probably at the point where he felt the swaying motion of his truck. The younger daughters, Helen, who was stretched out on the second seat, and Sue, who was facing the back of the station wagon with her head propped against the rear of the second seat, survived.

A witness, Carl Tiekotter, was driving south on the highway behind Hutchinson's truck. As he crested the north hill, the Fouts station wagon passed him, going approximately 60 to 65 miles per hour. When Tiekotter was about halfway down the hill he noticed the bluish-gray haze covering and obscuring both lanes of traffic at the bottom of the hill about 600 or 700 feet ahead of him. He did not see either the Fouts car or the truck in the smoke. He slowed down to five miles per hour as he drove into the smoke and saw the two vehicles after they had collided. He observed no skid-marks behind the Fouts car. Two other witnesses, Charles Funk and Marion Boatman, were driving separate vehicles in a northerly direction on the highway toward the Hutchinson truck. Both testified that they saw the smoke behind the truck but neither of them saw the Fouts car until they drew alongside it after the collision. Sue Fouts, aged 11 at the time of the accident, testified by stipulation that she was seated in the station wagon facing to the rear. Just

before the accident she noticed grayish-white smoke to the rear of the car, turned, looked forward and saw nothing but smoke ahead of the car. She remembered nothing else. Helen Fouts did not testify.

Appellant Hutchinson had experienced no prior difficulty with his truck before the valve head broke off. Witness Homer Lutes, a mechanic where the appellant's truck was regularly serviced, testified:

"It gives no warning when one breaks off. It happens."

On appeal, Hutchinson contends:

"I.

"The trial court erred in overruling appellant's motion for judgment in accordance with appellant's motion for a directed verdict.

"A. Appellant was not guilty of any actionable negligence.

"B. The evidence did not warrant the jury's finding that appellee driver was not negligent or negligent in a slight degree as compared to appellant's gross negligence.

"II.

"The trial court erred in instructing the jury concerning placement of dangerous articles or substances upon the highway."

In considering appellant's first contention that the trial court erred in overruling his motion for a directed verdict, we observe the general rule. The Supreme Court of Nebraska has well stated it in Caster v. Moeller, 1963, 176 Neb. 30, 125 N.W.2d 89, at page 91 of 125 N.W.2d:

" 'A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from

the facts in evidence.' Bland v. Fox, supra. [172 Neb. 662, 111 N. W.2d 537.]"

See, also, MacDonald Engineering Co. v. Hover, 8 Cir., 1961, 290 F.2d 301, 303, and Continental Can Co., Inc. v. Horton, 8 Cir., 1957, 250 F.2d 637, 640.

In support of his contention that there is no evidence of actionable negligence on the part of appellant, appellant cites to us the case of Haight v. Nelson, 1953, 157 Neb. 341, 59 N.W.2d 576, 42 A.L. R.2d 1. Therein the defendant drove his car into the rear of plaintiff's stalled car which was standing on the highway at night. The jury returned a verdict in favor of the defendant on a counter-claim and both parties appealed. The court there said at page 582 of 59 N. W.2d:

> "This is not a case of operating or parking a car on a highway at night without appropriate lights as required by our statutes sections 39–778 and 39–7,112, R.R.S.1943. It is a case where the operator thereof, because of reasons beyond his control, found it impossible to prevent his car from stalling on the highway without power or lights or to do anything in regard to moving it, after it had so stalled, before it was hit. See, Pierson v. Jensen, 150 Neb. 86, 33 N.W.2d 462."

Appellant here directs attention to the fact that the Nebraska court, at page 583 of 59 N.W.2d, cited with approval the following:

> " 'Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated.' 1 Shearman & Redfield on Negligence (Rev. ed.), § 24, p. 50.

> "We think the evidence shows that appellant did only what any reasonably prudent person would ordinarily have done under the circumstances and nothing that such a person would not have done. We find, as a matter of law, there is no evidence of any conduct on the part of appellant from which a jury could have found he was negligent."

Appellant failed to continue with the quotation from the Nebraska court, which is as follows:

> " * * * It should be remembered the accident happened so quickly after the car stalled that appellant did not have a reasonable time to remove it from the travelled portion of the highway." (Emphasis supplied.)

This is not the situation in the instant case and Haight is of no support for appellant herein.

The Nebraska case of Plumb v. Burnham, 1949, 151 Neb. 129, 36 N.W.2d 612, involved a truck which had stalled on the highway as a result of running out of gas. The truck was struck from the rear by the plaintiff, who did not see it in the late afternoon dusk. The truck driver, though he had some advance warning that he was going to run out of gas, and though he was familiar with the highway, only drove partially off of the road onto the soft shoulder. On the question of the driver's negligence, the Nebraska court said at page 619 of 36 N.W.2d:

> "As a matter of course, the mere stalling of a motor vehicle temporarily upon the highway caused by an exhaustion of the gas supply, would not ipso facto constitute negligence as a matter of law. Chapin v. Stickel, supra. [173 Wash. 174, 22 P.2d 290.] On the other hand, however, a finding by the jury of failure to use ordinary care to replenish the vehicle with gas thereafter, and thereby remove the stalled vehicle from the highway within a reasonable time when it was possible to do so, would be negligence."

Accord: Ricker v. Danner, 1955, 159 Neb. 675, 68 N.W.2d 338, 342.

Plumb was cited with approval by this Circuit in Knapp v. Styer, 8 Cir., 1960, 280 F.2d 384. In Knapp, arising out of a South Dakota accident, defendant's vehicle had broken down on the highway when its right rear dual wheels separated from the axle housing. Defendant abandoned the vehicle and while he was seeking help plaintiff crashed into it. The court stated at page 388:

"* * * there was ample evidence from which the jury could find that [defendant] Haigh by failing to report his breakdown or to seek help in nearby Redfield, negligently failed to act 'expeditiously and with reasonable promptness' in obtaining the removal of his truck from the travelled portion of the highway, where it obstructed traffic."

In the instant case there is evidence that, even though the appellant had opportunity to do so, he failed to use ordinary care by not removing his defective vehicle from the highway and by not turning off the motor of the same. From this evidence the jury could find appellant had committed actionable negligence. The jury could reasonably determine that the appellant had knowledge of the obstruction he was creating on the highway from the top of the north hill, where he first observed what was happening. This was at a distance approximately 2500 feet north of the point of accident. Apparently the smoke or vapor became less as the appellant let up on the accelerator and coasted down the incline, but when he accelerated as he came into the bottom of the valley heavy smoke was again emitted which covered the entire highway and obscured it from traffic traveling in either direction. The jury could, and undoubtedly did, find that the appellant acted unreasonably in not pulling his truck over onto the shoulder of the road or into one of the four driveways turning off from the highway where, in perfect safety, he could have stopped his motor so as to prevent the continuing smoke. Appellant was familiar with the highway and had knowledge of the driveways.

From all of these facts, the jury could very well infer that appellant had adequate warning and was fully apprised of the obstruction which his vehicle was creating, that he had sufficient opportunity to remove his hazardous vehicle from the highway, and that by failing to remove the said vehicle appellant negligently maintained the said obstruction, even though he was in no way at fault in causing it in the first instance. In the hope that he could reach a service station at Murray Corner, eight-tenths of a mile distant from the point where he first became aware of the dangerous situation he was creating, appellant chose to take chances by continuing on the highway with his truck emitting dense smoke and vapor which obscured the vision of the drivers of other vehicles. We think that the record fully justified the District Court in denying appellant's motion for judgment based upon the claim that no actionable negligence on the part of the appellant had been established.

Appellant's further assertion under his first claim of error in denying his motions for judgment is premised on the proposition that the evidence did not warrant the jury's finding that the driver of the Fouts car was not negligent or negligent in only a slight degree as compared to appellant's gross negligence. Nebraska observes the comparative negligence doctrine as it was adopted by the legislature of that state in 1913. R.S.Neb. 25–1151 provides:

"*Actions for injuries to person or property; contributory negligence; comparative negligence.* In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the

amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

This court, speaking through Judge Woodrough, in Continental Can Co., Inc. v. Horton, 8 Cir., 1957, 250 F.2d 637, said at pages 644–645:

"Under Nebraska law, the court in an action for damages for negligence is required to direct a verdict for defendant if the evidence shows beyond a reasonable dispute that the plaintiff has been guilty of contributory negligence and that such negligence is more than slight as compared with defendant's negligence. Thomison v. Buehler, 147 Neb. 811, 25 N.W.2d 391, 393. *But if on all the evidence reasonable minds might fairly differ in their conclusion as to the existence of contributory negligence or as to its degree being more than slight in the circumstances, the question is for the jury to determine.* Surface v. Safeway Stores, Inc., 8 Cir., 169 F.2d 937, 939–940 (Neb.). Cf., Halliday v. Raymond, 147 Neb. 179, 181, 22 N.W.2d 614; Meyer v. Platte Valley Const. Co., 147 Neb. 860, 863, 25 N.W.2d 412; Raile v. Toews, supra, 165 Neb. [184] at pages 187–188, 84 N.W.2d [199] at pages 201–202.

"The trial court here submitted the issue of plaintiff's contributory negligence to the jury under proper instructions, including an instruction on the doctrine of comparative negligence under which plaintiff is not barred from recovery where his contributory negligence is slight and the negligence of defendant is gross in comparison. *The test under Nebraska's comparative negligence statute is not based upon absolute degrees of negligence but rather upon a comparative test of the relative degrees of negligence between the parties.* Andelt v. County of Seward, 157 Neb. 527, 60 N.W.2d

604; Roby v. Auker, 151 Neb. 421, 37 N.W.2d 799. Tested by this rule we hold the question of plaintiff's contributory negligence was one of fact and was properly submitted to the jury. The court did not err in denying defendant's motion for directed verdict." (Emphasis presently supplied.)

The Nebraska Supreme Court, in Meyer v. Platte Valley Const. Co., 1946, 147 Neb. 860, 25 N.W.2d 412, said at page 415 of 25 N.W.2d:

"The latter case [Halliday v. Raymond, 147 Neb. 179, 22 N.W.2d 614] also approved and applied the rule that 'Where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury, but where the evidence shows *beyond reasonable dispute* that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant.' " (Emphasis supplied.)

Certainly the evidence in this case makes it apparent it is not "beyond reasonable dispute" that Doris Fouts was more than slightly negligent in comparison to appellant's gross negligence. A jury question as to the contributory negligence, if any, of Doris Fouts and the degree of its severity was clearly present.

The trial court included the following in its instructions:

"You are instructed that where one driving a motor vehicle on a highway is suddenly confronted by an emergency not of her own making, requiring instant decision, she is only required to demean herself as an ordinary, careful and prudent person would have done under like circumstances, and if she does that she is not guilty of negligence, and that would be equally applicable if you should find that the defendant was confronted with an emergency. The same rule would apply."

Appellant made no objection to this instruction and if the jury, as it well might have, found such an emergency situation existed, Mrs. Fouts would not have been held to the same degree of care and circumspection as where no danger was present. See Belik v. Warsocki, 1934, 126 Neb. 560, 253 N.W. 689, 691–692.

■ In Andelt v. Seward County, 1953, 157 Neb. 527, 60 N.W.2d 604, the Nebraska Supreme Court, at page 607 of 60 N.W.2d, stated:

" * * * The rule is: 'Where a driver of an automobile is suddenly confronted with an emergency requiring instant decision, he is not necessarily guilty of negligence in pursuing a course which mature reflection or deliberate judgment might prove to be wrong.' Riekes v. Schantz, 144 Neb. 150, 12 N.W.2d 766."

Therefore, what might normally constitute "more than slight negligence" in a normal situation might only be "slight negligence" for purposes of the Nebraska comparative negligence statute in an emergency situation. From the testimony of Carl Tiekotter we do know that Mrs. Fouts was apparently driving within the speed limit for that time and that place when she passed him. What Mrs. Fouts thought or did on encountering the hazard created by appellant's truck, whether she attempted to turn or stop, will never be conclusively known as there were no eye witnesses to the actual collision. Whether the heavy smoke, obscuring vision, came upon her suddenly creating an emergency, we do not know. The important factor is that from the available evidence the jury could as reasonably determine as not that Mrs. Fouts was no more than slightly negligent. Certainly, as a matter of law, the evidence does not conclusively support a finding that Mrs. Fouts was more than slightly negligent so as to justify granting appellant's motion for judgment.

■ Appellant's second contention is that the trial court committed error in giving the following instruction, to which an exception was taken:

"You are instructed that where a person places dangerous articles or substances upon the highway that a failure within a reasonable time to clear the highway of such dangerous articles or substances left thereon, or to reasonably warn others lawfully on said highway of said dangerous condition, constitutes actionable negligence."

Appellant contends that this instruction has no application to this case because the rule of law embodied therein pertains only to those articles or substances which are physically solid, which rest on the highway, and which physically impede free movement of a vehicle thereon. Appellant concedes that the substance of the instruction has been cited in many Nebraska cases. Shupe v. Antelope County, 1953, 157 Neb. 374, 59 N.W.2d 710; Kuska v. Nichols Const. Co., 1951, 154 Neb. 580, 48 N.W.2d 682; Grantham v. Watson Bros. Transportation Co., 1943, 142 Neb. 367, 9 N.W.2d 157; Swinford v. Finck, 1941, 139 Neb. 886, 299 N.W. 227; Simonsen v. Thorin, 1931, 120 Neb. 684, 234 N.W. 628, 81 A.L.R. 1000. Appellant contends, however, that in each of these cases the article or substance referred to was a solid object lying in the highway and that there are no Nebraska cases in which this rule of law has been applied to a moving vehicle, such as appellant's truck, or to an atmospheric condition. We do not agree. None of the Nebraska cases cited by appellant states that the article or substance impeding the free movement of a vehicle on a highway must be a dormant and physically solid object. In fact, the Shupe case indicates quite to the contrary, where the court states at page 713 of 59 N.W.2d:

"An obstruction, in the sense here used, includes anything which will interfere with the public's reasonable use of the highway easement."

We think that the smoke and the truck together in combination created "dangerous articles or substances" and that the trial judge's instruction was not er-

ror. It is a perfectly reasonable assumption that the combination of the truck and smoke obstructed the highway in such a manner so as to make it hazardous for others. In Johnson v. Metropolitan Utilities District, 1964, 176 Neb. 276, 125 N.W.2d 708, the court said at page 710 of 125 N.W.2d:

"* . * * One who places an obstruction upon a highway in such a manner that it is dangerous to others using the highway has a duty to remove the obstruction or to use due care to warn others upon the highway of the danger incident to the obstruction. Simonsen v. Thorin, 120 Neb. 684, 234 N.W. 628, 81 A.L.R. 1000. See, also, Grantham v. Watson Bros. Transp. Co., 142 Neb. 362, 6 N.W.2d 372, on motion for rehearing, 142 Neb. 367, 9 N.W.2d 157; Kuska v. Nichols Constr. Co., 154 Neb. 580, 48 N.W.2d 682."

It may well be true, as appellant points out, that Nebraska has never been urged to apply the law to other than solid objects. In California, however, a like statute was held applicable under very similar circumstances. See Bright v. East Side Mosquito Abatement District, 1959, 168 Cal.App.2d 7, 335 P.2d 527. In reversing a judgment of dismissal, the court said at page 532 of 335 P.2d:

"If a person drove an automobile down a dusty road in such a manner that the dust raised obscured the vision of a motorist who followed him and the driver of the following vehicle was injured because he ran off of the road because of obscured vision, it would seem that the driver of the second vehicle was injured because of the negligent operation of the first vehicle. If a car with a faulty muffler exuded smoky fumes which obscured the road, it would seem that a person injured because of reduced vision would have been injured in part because of the faulty operation of a motor vehicle. The only difference in the instant case is that the point of emission of the spray was at a distance from the spot where the fog settled over the highway. But this would only go to the question of negligence which would be a question for the jury. Henderson v. Northam, 176 Cal. 493, 168 P. 1044. In the instant case the jeep and the trailer were operated as a unit. The jeep was in operation. A spray was being emitted from the trailer portion of the motor vehicle. It was alleged that this was the cause of plaintiff's injuries. As against a general demurrer we believe that sufficient was alleged to state a cause of action under the provisions of the section. The statute is broad enough to embrace an injury which results from the negligent operation of a vehicle. It is not limited to situations where a person is injured because of contact with a vehicle."

We find no error in the giving of the instruction.

This case is in all things affirmed.