LUCILLE HAMMOND, APPELLEE, V. JOSEPH T. MORRIS, APPELLANT.

24 N. W. 2d 633

FILED OCTOBER 11, 1946. No. 32082.

*Gaines & Shoemaker,* for appellant.

*Boyle & Boyle,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

MESSMORE, J.

The plaintiff brought this action at law to recover damages for personal injuries sustained by her which she claims were caused by the automobile of the defendant being negligently operated by him. From a verdict for the plaintiff and judgment rendered thereon, defendant appeals.

The defendant moved for a directed verdict at the close of the plaintiff's evidence, and again at the close of all of the evidence, which motions were overruled.

" 'A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in the evidence.' Moncrief v. Interstate Transit Lines, 129 Neb. 168, 261 N. W. 163." Parks v. Metz, 140 Neb. 235, 299 N. W. 643. See, also, Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766.

"In determining the correctness of a directed verdict on the ground of plaintiff's contributory negligence sufficient to bar a recovery, the testimony most favorable to plaintiff will be accepted as true." Riekes v. Schantz, *supra*.

For convenience, the appellee will hereinafter be referred to as plaintiff, and the appellant as defendant.

The defendant contends that the plaintiff was guilty of negligence which contributed to the injury and, that as a matter of law, she is precluded from recovery; that the sole and proximate cause of the accident resulting in her injuries was her own gross negligence and want of care.

Whether the question is one of fact for the jury or one of law for the court, this court has often announced the rule: "Where different minds draw different inferences or conclusions from the facts proved, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury to be determined; but, where the evidence is undisputed, and but one reasonable inference can be drawn from the facts, the question is one of law for the court." Chew v. Coffin, 144 Neb. 170, 12 N. W. 2d 839.

"This court has held many times that, where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury, but where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then

it is proper for the trial court to instruct the jury to return a verdict for the defendant. Sindelar v. Hord Grain Co., 116 Neb. 776, 219 N. W. 145." Whittaker v. Hanifin, 138 Neb. 18, 291 N. W. 723. See, also, Chew v. Coffin, *supra*; Riekes v. Schantz, *supra*.

. In considering the defendant's motions for directed verdict and the court's ruling thereon, it becomes necessary to bear in mind the foregoing rules. It therefore becomes the duty of this court to ascertain, from an analysis of the relevant and material evidence, whether or not the trial court erred in submitting the case to the jury.

The record discloses that the scene of the accident in this case is the intersection of Forty-ninth and Dodge Streets. This is a four-way intersection and Dodge Street, running east and west, at this point is 56 feet wide, and Forty-ninth Street, running north and south, is 30 feet wide.

During the evening of November 26, 1944, the plaintiff and Mr. Calver, a friend of the family, and two of the plaintiff's children, attended a motion picture show. When the show was over the children were taken home. Thereafter, the plaintiff and Calver, in his automobile, drove to the vicinity of Forty-ninth and Dodge Streets where he parked the car facing east on the south side of Dodge Street in a space in front of the Rusk Larson filling station, between the east and west driveways thereof. This parking space is approximately 55 feet from the east curb line of Dodge and Forty-ninth Streets, as shown on exhibit 2, drawn to scale. The plaintiff and Calver crossed the street to the northeast corner of Forty-ninth and Dodge Streets and went into a tavern called the Forty Niner where they remained for a while. After leaving, they walked a block west on the north side of Dodge Street to a place called the Dundee Dell. After leaving there, they walked east and crossed Forty-ninth Street with the traffic light in their favor, and stood in front of the Forty Niner and waited for the traffic light to turn in their favor so as to afford them an opportunity to cross Dodge Street to the south for

the purpose of going to the car. Before proceeding to cross the intersection, the plaintiff did not look either to the east or to the west, and the vision was clear to the west for a block or so and you could see some distance to the east. With reference to the pedestrian lane, she and Calver were probably a little west of the center of the lane, and Calver was on her right, or to the west of her. She noticed no lines that outlined the cross walk because she was concentrating on where she was walking, to keep from slipping. The night was cold, and there were some spots on the pavement that were slippery. She kept looking down at the car tracks. She arrived at the car tracks, crossed them, and was still in the pedestrian lane going directly south. The next thing she knew she was lying in the doorway of an upholstery shop on the north side of Dodge Street.

There is some conflict in her testimony, in that on cross-examination she said she was directly opposite the traffic light, which is on the south side of Dodge Street and a little east, when she started to cross the intersection, while on re-direct she testified that she was to the extreme west of the curb line on Forty-ninth Street and she knew this to be a fact because she could see in the door of the Forty Niner when she started across the intersection to the south.

The witness, Dresher, was driving west on Dodge Street about one o'clock in the morning, and was on the north side thereof and east of Forty-ninth Street. When he was about opposite, or south, of an eating place called the Toddle House which is approximately 228 feet distant from the east curb line of Forty-ninth Street, and while he was proceeding up the hill towards Forty-ninth Street, he saw two people stepping off of the north curb. He modified this testimony on cross-examination by stating that they had proceeded south about 10 to 12 feet before he saw them. There was a car coming east over the top of the hill approaching Forty-ninth Street, and these people were walking in a southeasterly direction. The car kept coming and the people kept walking, and when he was about even with

the people, or right north of them, the car from the west ran into them, or, the people walked into the car, he didn't know which. He placed the point of impact as being in front of the furniture store and between it and the filling station on the south side of the street. Previously, at the coroner's inquest he testified he did not know the point of impact. He saw the lights of the eastbound car as it came over the hill, and continued to watch the people walking, and they walked until the accident occurred. He did not notice the traffic lights at Forty-ninth and Dodge Streets, and was unable to tell whether the traffic lights on the corners were red for the east and west traffic. The people were hit by the left front fender of the defendant's car, and were knocked forward, straight through the air, about three feet off the pavement.

At the time these people were struck they were in the inside lane on the south part of Dodge Street, which is a four-lane highway. This would place them in the third lane, counting the lanes as one, two, three, and four from the north. There is other testimony of this witness that they were in the fourth lane, or the very south lane of the street.

After the accident, this witness testified, the plaintiff was lying in the inside lane of the traffic moving west, which would place her body on the north side of Dodge Street. Calver was lying in the street car tracks in the lane moving east, on the south side of Dodge Street. This witness placed the speed of the defendant's car at 30 to 35 miles per hour, and said that the defendant did not slow up. He saw some skid marks which the officers were measuring.

The defendant and a companion were returning from Peony Park, proceeding east on Dodge Street. As defendant approached the intersection at Forty-ninth and Dodge Streets he testified he was traveling about 25 miles per hour, and the right side of his car was three or four feet distant from the south curb line. He stated he was

about in the center between the parking and the curb as he passed Forty-ninth and Dodge Streets.

The speed limit in the intersection at this point is 15 miles per hour. After passing the intersection, or traveling Dodge Street proper, the speed rate is 25 miles per hour. There is a sign to this effect a block west of the intersection. From exhibit 2, the defendant was confronted with the emergency 16 feet west of the traffic light and about at the point that would indicate the west line of the cross walk running north and south across Dodge Street.

The traffic light was located on the southeast corner of this intersection and was green, or in his favor, when he proceeded through the intersection, and when he was on his way down hill there was a car coming up hill from the east on the north side of Dodge Street and the lights of this car were shining in his eyes and blinded him. Something got in front of those lights and he saw the shadow as soon as it stopped in front of the light on the fender of his car to the left. He jammed on his brakes and said to his companion: "Anne, I think I hit somebody." This shadow was right in front of the light and he did not see it until the light hit it. The morning of the accident he made a statement wherein he said in substance: " * * * There were cars coming up and there were lights and there were cars right behind me. * * * I had passed the intersection where I hit." He was asked when he first saw the object that he struck, as to where it was with reference to the front end of his car. He answered, "In front of my car." He was not aware that he had struck a man or woman until he got out of the car. He also testified that the plaintiff and her companion must have been cutting across to their car on the wrong side of the street.

There was one small scratch, and no dents, on the left side of the left front fender of his car. When the defendant's car came to a stop, it was opposite the grocery store on the left, or north side; on the right, or south side, were the gas pumps of the filling station. He got out of the car to see

what happened and saw the plaintiff lying near the front end, to the left, of the car. He picked her up and took her over to the doorway of the furniture store. He moved his car to the right of where it was standing, cramping the wheels toward the south and pushing it. It was parked at the end of the filling station drive.

There is contradiction in the defendant's testimony as to what he had said on previous occasions with reference to the object which he struck being in front of his car at the time of the impact, or to the left thereof. He testified he was looking straight ahead with the lights in his eyes, he did not see the plaintiff or Calver and did not slow down, and the first he did see of them was when they appeared about a foot from the left front fender. His lights and brakes were in good condition. He stopped suddenly. He did not know how far east of the cross walk he struck the plaintiff and Calver. He was sure that it was not near the cross walk because his car was a full length beyond the cross walk before it contacted anything and, in addition thereto, he was on the down grade and could not be on the cross walk.

Defendant's companion testified that as they approached the intersection the lights were green, and as they drove into and through the intersection the lights did not change. After crossing the intersection and starting down hill there was a thud and the car came to a sudden stop. She saw no one before the thud, and the car stopped opposite the Rusk Larson filling station. They were traveling about 25 miles per hour and she had observed the traffic lights in their favor about a quarter of a block from the traffic signal. At the inquest she testified they were traveling 25 or 30 miles per hour. The brakes were good on the defendant's car, and the lights extended from curb to curb.

The record further discloses that the traffic lights at this intersection were in good working order on the night in question. The green light for traffic moving across Dodge at Forty-ninth Street shows for 17 seconds; the

green light on Dodge Street, controlling traffic, shows for 30 seconds, and the red for 17 seconds. A check of traffic lights is made every day for repairs and replacements.

Traffic patrolmen Dworak and Giandinoto arrived at the scene of the accident within three or four minutes after it happened. Dworak testified that the defendant's car was close to the south curb and east of the driveway of the filling station, and had been pushed in that position. The officers assisted in removing the injured to the hospital and returned in about 25 minutes. They made a sketch, exhibit 1, which was not drawn to scale but according to the testimony correctly reflects the different articles, objects, skid marks, and glasses found on the pavement, their location and distance in feet. The measurements were taken from the east curb line east thereof at the intersection of Forty-ninth and Dodge Streets. The pedestrian lane is 16 feet in width, and the diagram was made about an hour or so after the accident and was for the purpose of showing the different marks, and for no other purpose.

Exhibit 2, a map drawn to scale by the safety engineer, reflects the exact distances as shown by exhibit 1. Exhibit 1 reflects the first skid mark starting 26 feet east of the curb line on Forty-ninth and Dodge Streets, and extending for a distance of 38½ feet, and was 12 feet north of the south curb line of Dodge Street. The skid mark of the left wheel starts 44 feet east of the curb line and extends a distance of 20½ feet. The rim of the plaintiff's glasses was found 53 feet east of the curb line and 28 feet north of the south curb on Dodge Street; another piece of her glasses was found 68 feet east of the curb line and 31 feet north of the south curb line on Dodge Street. The body of Calver was picked up 95 feet east of the curb line and 24½ feet north of the south curb. The witness Giandinoto corroborated the measurements as testified to by Dworak.

The plaintiff testified that shortly after the accident the defendant said: "I hit you; I am sorry; it is all my fault." This testimony is denied by the defendant.

There is the testimony of the cashier of the Forty Niner that Dresher used the telephone to call the police and the ambulance. When he returned to the tavern he said: "They were walking with the green light. They were in the right."

Certain other exhibits appeared in evidence consisting of pictures taken at different distances from the intersection in question, and were introduced for the purpose of disclosing the distance that one may see east and west on Dodge Street approaching Forty-ninth Street from either direction, and north and south approaching Forty-ninth and Dodge Streets from either direction. Mathematical estimations were given by the safety engineer as to the number of feet an automobile would travel at 25 miles per hour, coupled with the normal reactions of a driver confronting an emergency, and also at 30 miles per hour, this in the ratio of feet to seconds of time the automobile travels. We deem it unnecessary to detail this evidence.

The foregoing constitutes the relevant and material facts appearing from the record.

In furtherance of the defendant's contention, the case of Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790, is cited as being in point and controlling in the instant case. "When one, being in a place of safety, sees or could have seen the approach of a moving vehicle in close proximity to him and suddenly moves from the place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence more than slight in degree, as a matter of law, and precludes recovery."

In the case of Belville v. Bondesson, 130 Neb. 926, 266 N. W. 901, cited in Cuevas v. Yellow Cab & Baggage Co., *supra*, in discussing the contributory negligence of a pedestrian crossing the street and being struck by an automobile, this court said: " * * * it is necessary for us to formulate some idea as to what an ordinarily cautious and prudent man would do under like circumstances. * * * On reaching the intersection, he would look both to his right and to his

left. Seeing that no cars were coming from the right that would endanger him before reaching the center of the street and determining that he could safely cross in front of cars coming from his left, he would proceed, being watchful of the cars whose traffic lanes he was crossing. Arriving in the center of the street, he would devote the greater part of his attention to cars coming from the south whose traffic lanes he would cross in reaching the other side of the street, being alert, however, at all times, to the possibility that a car might appear where normally it would not be expected."

Although in Cuevas v. Yellow Cab & Baggage Co., *supra*, traffic lights and signals were not involved, it is ordinarily the duty of a pedestrian to look to the right and left for approaching traffic after having obeyed the traffic signals and entered a pedestrian cross walk at a street intersection. See Halliday v. Raymond, *ante* p. 179, 22 N. W. 2d 614.

The pedestrian in Cuevas v. Yellow Cab & Baggage Co., *supra*, as stated in the opinion, did not look to the right nor the left after starting across the street. He was not watchful of the cars whose traffic lanes he was crossing, nor did he, at the center of the street, devote the greater part of his attention to cars coming from the south. In short, he did not do the things an ordinarily cautious and prudent man would do under like circumstances. This court held that the pedestrian's contributory negligence, under such circumstances, as a matter of law, would preclude recovery in his behalf.

The defendant argues: If the plaintiff in the instant case had looked to the west as she stepped off the curb on the north side of the street she could have seen the defendant's car approaching. If she had looked as she reached the center of the street she could have again seen the defendant's car, at that time only a short distance to the west. If she had been paying any attention whatever for her own safety she should have seen the reflection of the lights as they came over the hill, as they were plainly dis-

cernible to the witness Dresher. If she had taken any precaution whatever, the accident would not have occurred. Therefore, the case of Cuevas v. Yellow Cab & Baggage Co., *supra,* governs and is decisive of the instant case.

Under the facts in the instant case, we are unable to agree with the defendant's foregoing contention. The facts conclusively show negligence on the part of both the plaintiff and defendant.

The police code of the city of Omaha provides: "No person shall drive or operate a vehicle or street car upon the street at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger life or limb or any person, nor in any case at a rate of speed exceeding the speed limits set forth in Section 42-B." The indicated speeds as provided for in the code are as follows: "Fifteen miles per hour when approaching within fifty feet and traversing an intersection of a highway, when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at. anytime during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic on all highways entering such intersection, for a distance of two hundred feet from such intersection."

There is conflict in the evidence as to whether the traffic light favored the defendant at the intersection, or the plaintiff. If the defendant went through the intersection when the traffic light was red, he was violating the law. If he was proceeding through the intersection at a speed prohibited by law, he was violating the law. There is his own evidence that he was proceeding through the intersection at 25 miles per hour at a time when he was blinded by headlights of an on-coming car, and, by his own evidence, he did not see the plaintiff and Calver until his car was right upon them, and some evidence by him that he did not see them at all until after he struck them; and also the evi-

dence of his companion to the same effect. This develops also the question as to whether the defendant was keeping a proper lookout for other traffic that might be using the streets and cross walks at that time and place.

There is a conflict in the evidence as to whether or not the plaintiff and her companion were on the pedestrian lane or the cross walk with the green light in their favor, or proceeding diagonally southeast, as claimed by the defendant.

We conclude that under the facts as shown by the record in this case, the question of the negligence of the defendant while driving his car at the time of the accident, and the contributory negligence of the plaintiff, is one of fact to be determined by the jury, and likewise the degree or quality thereof. Chew v. Coffin, *supra*; Riekes v. Schantz, *supra*; Sindelar v. Hord Grain Co., *supra*.

In this connection, the district court properly instructed the jury on the comparative negligence rule as stated correctly in Wentink v. Traphagen, 138 Neb. 41, 291 N. W. 884, quoting from Morrison v. Scotts Bluff County, 104 Neb. 254, 177 N. W. 158, and followed in Chew v. Coffin, *supra*, as follows: " * * * if plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight and the negligence of defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery."

The district court did not err in submitting the case to the jury.

The defendant contends that the trial court erred in permitting the introduction in evidence of exhibit 1, the

sketch heretofore referred to, exhibit 5, a photograph, and exhibit 6, a photograph, and to the testimony of the traffic officers with reference to the measurements as appearing on exhibit 1. The measurements contained in exhibit 1, reflect the exact distance from the intersection that the different objects indicated were found, and the length of the skid marks and the point where they started and the point where they ended. Defendant's objections to the skid marks is that they are not traceable to the wheels of the defendant's car, as the car had been moved. The photographs complained of by the defendant were introduced for the purpose of indicating the view of the intersection from the distances from which the pictures were taken. We conclude that the admission of the foregoing exhibits and the testimony of the traffic officers with reference to the measurements of the respective objects and articles is, at most, error without prejudice.

The defendant contends that the verdict is excessive. The jury passed upon the extent of plaintiff's injuries and the effect they had upon her, and we see no reason to disturb the jury's verdict in this respect.

For the reasons given in this opinion, the verdict of the jury and the judgment of the district court rendered thereon are affirmed.

AFFIRMED.

Wenke, J., participating on briefs.