IN RE ESTATE OF MILDRED E. KINSEY, DECEASED. MAE HEITMAN, ADMINISTRATRIX OF THE ESTATE OF MARTIN HEITMAN, DECEASED, APPELLANT, V. R. LUHRS, ADMINISTRATOR OF THE ESTATE OF MILDRED E. KINSEY, DECEASED, APPELLEE.

40 N. W. 2d 526

Filed December 29, 1949. No. 32607.

*Beatty, Clarke, Murphy & Morgan,* for appellant.

*Henry W. Curtis* and *Charles R. Shopp,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Two airplanes, respectively operated by Martin Heitman and Mildred E. Kinsey, collided while in flight, at an altitude of approximately 1,200 feet, and fell to the earth, carrying both pilots to their death. This action was instituted when plaintiff filed a claim in the county court against the estate of Mildred E. Kinsey, deceased, to recover damages sustained by the widow and next of kin of Martin Heitman, whose death was allegedly caused by the negligence of Mildred E. Kinsey. From disallowance of the claim by the county court, an appeal was taken to the district court. There the cause was tried to a jury. At the conclusion of all the evidence, plaintiff moved that the court direct the jury to find for plaintiff, and submit for its determination only the question of damages. The motion was overruled. Defendant did not at any time move for a directed verdict.

The cause was submitted to the jury. It awarded plaintiff a verdict for $7,000, which was received and ordered filed with the clerk of the district court. Thereafter, within time, defendant filed a motion for new trial, contending among other things that the verdict was not sustained by the evidence but contrary thereto, and contrary to law; that the trial court erred in the giving of certain instructions; and that the claim was not a proper claim since it did not accrue during the lifetime of defendant's decedent. The last contention was disposed of by the opinion in Rehn v. Bingaman,

151 Neb. 196, 36 N. W. 2d 856, and no further discussion is required.

After a hearing, the trial court sustained defendant's motion for a new trial, set aside the verdict, and on its own motion dismissed the case at plaintiff's cost, upon the premise that the verdict returned was not sustained by sufficient evidence but contrary thereto, and contrary to law, in that the evidence adduced in plaintiff's behalf disclosed as a matter of law not only that Martin Heitman assumed the risk of injury or death, but also was guilty of contributory negligence more than slight, barring plaintiff's recovery. Plaintiff appealed, assigning substantially that the trial court erred: (1) In dismissing the case on its own motion, at plaintiff's cost, the effect of which was to enter a judgment for defendant notwithstanding the verdict in a cause wherein defendant had never made a prerequisite preliminary motion for directed verdict or filed a motion for judgment notwithstanding the verdict based upon such a preliminary motion; and (2) in vacating the verdict and sustaining defendant's motion for new trial. We conclude that such assignments should be sustained.

In disposing of the assignments, we are required to apply the same rules of procedure as in any other civil action originally instituted in the district court. Sections 24-544 and 27-1305, R. R. S. 1943.

Solution of the first assignment depends upon the application of sections 25-1315.01 to 25-1315.03, R. R. S. 1943. Section 25-1315.01, R. R. S. 1943, provides: "A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor."

Section 25-1315.02, R. R. S. 1943, provides: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

Section 25-1315.03, R. R. S. 1943, provides: "An order entering judgment as provided in section 25-1315.02, or granting or denying a new trial, is an appealable order, and the time for taking appeal shall commence to run from the date of entry of such order. The Supreme Court on appeal from an order granting a new trial, or upon a review of an order denying a new trial in the action in which such motion was made, or on appeal from the judgment, may order and direct judgment to be entered in favor of the party who was entitled to such judgment."

This court has heretofore discussed, construed, and applied such sections or a part of them in situations having a similarity although not identical with those here presented. See, In re Estate of Farr, 150 Neb. 67, 33 N. W. 2d 454, vacated in 150 Neb. 615, 35 N. W. 2d

489 upon other grounds; Patrick v. Union Central Life Ins. Co., 150 Neb. 201, 33 N. W. 2d 537; Krepcik v. Interstate Transit Lines, 151 Neb. 663, 38 N. W. 2d 533. In the last-cited opinion it was said: "The act of 1947 is a special statute complete within itself, authorizes an order for a judgment notwithstanding a verdict, makes it an appealable order, and limits the time to 30 days within which an appeal may be taken from the entry of such order." Also, with relation to judgments notwithstanding the verdict, it was said: "This act applies only to a case in which a motion for a directed verdict is made at the close of the evidence."

We conclude that a motion for directed verdict is an absolute prerequisite to a motion for judgment notwithstanding the verdict, and the trial court cannot, either upon its own motion or upon motion for judgment notwithstanding the verdict, set aside a verdict and enter a judgment notwithstanding the verdict where no preliminary motion for a directed verdict was made, as required by the foregoing statutes. Other jurisdictions have so construed and applied similar rules and statutes. See, Hemstad v. Hall, 64 Minn. 136, 66 N. W. 366; Wilcox v. Schloner, 222 Minn. 45, 23 N. W. 2d 19; Friedman v. Colonial Oil Co., 236 Iowa 140, 18 N. W. 2d 196; Gross v. Miller, 51 N. D. 755, 200 N. W. 1012; Johns v. Ruff, 12 N. D. 74, 95 N. W. 440; Ennis v. Retail Merchants Assn. M. F. Ins. Co., 33 N. D. 20, 156 N. W. 234; Cushman v. Cliff House, 79 Cal. App. 572, 250 P. 575.

Defendant's contention that the trial court had inherent power and authority during the term, regardless of statutory procedure, to enter a judgment notwithstanding the verdict for insufficiency of the evidence, cannot be sustained. That conclusion was finally adjudicated in Winterson v. Pantel Realty Co., 135 Neb. 472, 282 N. W. 393, which opinion directly influenced enactment of the foregoing statutes.

On the other hand, we cannot agree with plaintiff's contention that making of a motion for directed verdict

was a prerequisite to filing a motion for new trial on the ground of insufficiency of the evidence to sustain the verdict.

Section 25-1142, R. R. S. 1943, not affected by the 1947 act in any manner so far as applicable here, provides: "A 'new trial' is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a decision by the court. The former verdict, report or decision shall be vacated and a new trial granted on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party; * * * (6) that the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law; * * *."

In the light thereof, we conclude that a party aggrieved by a verdict may move for new trial upon the grounds that "the verdict * * * is not sustained by sufficient evidence, or is contrary to law;" and the trial court has the power and authority to grant a new trial where legal cause or reason therefor appears in the record and timely motion for new trial has been filed, notwithstanding the fact that no prior motion for directed verdict has been made, since it does not appear that it was the plainly manifested intention of the Legislature in enacting sections 25-1315.01 to 25-1315.03, R. R. S. 1943, to abridge the right to new trials upon such grounds as were enumerated in section 25-1142, R. R. S. 1943, or if such were the intention, the language employed was not effective to accomplish that result. Evidently the purpose and intention of the 1947 act was not only to facilitate procedure but also to create additional rights rather than to abrogate statutory rights theretofore existent.

The foregoing conclusions leave for decision the primary question of whether or not the trial court erred in vacating the verdict and granting a new trial. In that connection, defendant argued that the trial court was right in granting a new trial, not only because the evi-

dence was insufficient to sustain the verdict, but also because the trial court erred in the giving of instructions Nos. 11, 12, and 15. Plaintiff argued contra, and contended that the cause should be reversed with directions to reinstate the verdict and enter judgment thereon in favor of plaintiff. We sustain plaintiff's contention.

The fundamental foundation for decision will be found in Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772. That opinion held: "The motion for a new trial is a statutory remedy, and a new trial can be granted by a court of law only upon the grounds, or some of them, provided for by the statutes." It also concluded that errors sufficient to cause the granting of a new trial were only those prejudicial to the rights of the unsuccessful party which appear in the record and have been presented to the trial court by motion for new trial or other appropriate pleading. The district court has the power and is required to consider and determine motions for new trial by the exercise of its judicial discretion, which means the application of statutes and legal principles to the whole record then before it. A new trial may be granted only for legal cause or reason and where it appears that a legal right has been invaded or denied. If legal cause or reason exists and the complaining party makes his application in writing within the time fixed by statute, the trial court has no discretion, and motion for new trial must be sustained. Otherwise it must be overruled, because where a party has sustained the burden and expense of a trial and has succeeded in securing the verdict of a jury on the facts in issue, he has a right to keep the benefit of that verdict and judgment thereon unless there is prejudicial error in the proceedings by which it was secured.

It is well established that where different minds may reasonably draw different conclusions from the evidence, or if there is a conflict in the evidence as to whether or not the evidence establishes negligence or contribu-

tory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to the jury for its determination. Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462; Hammond v. Morris, 147 Neb. 600, 24 N. W. 2d 633.

It was not then unlawful to fly in formation. An airplane is not an inherently dangerous instrument, even in flight, although it may be when improperly used or in the hands of an incompetent pilot. Annotation, 99 A. L. R. 184; Herrick v. Curtiss Flying Service, (N. Y.), 1932 U. S. Aviation Rep. 110.

As stated in Annotation, 69 A. L. R. 328: "Accordingly, it is held that the question whether the particular pilot exercised the diligence required of him by law is to be determined by the standard of ordinary care and diligence required of pilots of ordinary care and skill under the same circumstances and conditions."

In that connection, the general rule is, as stated in 6 Am. Jur., Aviation, § 23, p. 16: "In the absence of statutes covering the operation and management of airplanes at the time and place of an accident, specifically applicable to the issue of negligence in the operation thereof, the rules of law applicable to torts—the ordinary rules of negligence and due care—obtain. Thus, the rule of the common law that every person shall use ordinary care not to injure another, that is, such care as the great mass of mankind would use under the same or similar circumstances or such care as the ordinarily prudent person would use under the same or similar circumstances, applies. An aviator is under no duty to use the highest degree of care that men of reasonable diligence or foresight ordinarily exercise in the operation of airplanes, but is bound only to use ordinary care, although here, as in any other case, ordinary care differs under the circumstances. The care must be commensurate with dangerous consequences to be reasonably apprehended; it may be of a very high

degree under some circumstances and of a slight degree under others." See, also, 2 C. J. S., Aerial Navigation, § 19, p. 907, and § 23, p. 908; Fuelberth v. Splittgerber, 150 Neb. 309, 34 N. W. 2d 380; Davies v. Oshkosh Airport, Inc., 214 Wis. 236, 252 N. W. 602; Wilson v. Colonial Air Transport, Inc., 278 Mass. 420, 180 N. E. 212, 83 A. L. R. 329.

At the outset, in considering sufficiency of the evidence, it should be pointed out that defendant offered no affirmative evidence to controvert that adduced by plaintiff, except such as was offered in an effort to impeach the testimony of one of plaintiff's eye witnesses. In that regard, defendant adduced evidence that after the accident, such witness said: " 'I don't know how it happened,' " or " 'I didn't see how it happened,' " or that "he didn't know what happened until he got out to the scene where the planes were north of town." The witness himself denied making such statements, and testified that at said time, and since, he had said he "didn't understand how such an accident could happen." The credibility of his testimony was simply a question for the jury in any event.

Without dispute, October 19, 1947, was Sunday and nearly perfect flying weather at the Imperial Airport, where, for amusement and recreation, five licensed pilots planned to fly in formation. The pilots were Arlo Kellogg, manager of the airport, who arranged the flight; Clarence Helm, who was Kellogg's partner in operating a flight school at the airport; Vincent Lane, a flight instructor at the airport; Martin Heitman, aircraft repair and maintenance man at the airport, who then had about 5,000 hours of solo flying experience; and Mrs. Mildred Kinsey, operator of a cleaning establishment in Imperial, who then had about 300 hours of solo flying experience, and had theretofore owned several planes but then owned a Cessna 140, kept in her own hangar at the airport, which plane she had flown on

Sundays and some evenings for the last few months. She flew on the morning of the accident for about an hour in her plane, with Heitman, and had previously been in at least one and perhaps two formation flights at the airport.

The record discloses competent evidence that prior to the take-off, at about 4:15 p. m., the pilots all being present, Kellogg conducted a flight brief by drawing a sketch on the ground at the airport, thus mapping out the course of flight, and instructing what should be done by each pilot. It was then and there explained that Kellogg, flying an Aeronca Chief, the slowest plane, having a normal cruising speed of 90 to 95 miles an hour, was to take the lead, and the others were to follow. The Cessna 140's had a normal cruising speed of 105 to 110 miles an hour. Helm, flying a Cessna 140, was to take his place behind and on Kellogg's left; Lane, flying a Cessna 120, behind and on Helm's left; Heitman, flying a Cessna 140, behind and on Kellogg's right; and Mrs. Kinsey, flying her own Cessna 140, behind and on Heitman's right. They were advised to fly 1,000 or 1,200 feet apart; make no right turns; take off in turn southeast into the wind; and after about one-half mile, or when at an altitude of 400 feet, turn left 90 degrees, thence northeast about one-half mile, or until they reached an altitude of another 100 feet, then turn left 90 degrees, and fly northwest several miles until there was some sort of formation, when they would make a gradual shallow turn left and come back toward the airport in formation.

They each took off in turn toward the southeast as planned, Kellogg leading. He thereafter turned left northeast for some distance, then turned left again, and proceeded northwest several miles, at which point his plane and the Heitman, Helm, and Lane planes got into formation in their proper places, at intervals of about 1,200 feet. Kellogg then started the formation in a gradual, shallow, 10-degree turn left. At that time, Mrs.

Kinsey, who took off last, had not found her proper position in the formation, and in her then position was not visible to Kellogg. The gradual turn proceeded toward the southwest, and the planes came around until they faced the setting sun, where such condition made visibility more difficult. However, at that time Kellogg checked the formation again and found Heitman, Helm, and Lane all in a very nice "V" formation in their proper positions. He then observed Mrs. Kinsey about one-half mile to the rear of the formation and 150 or 200 feet higher than the other planes. The formation continued the turn to the left until they were all headed southeast toward the airport, at about 90 miles an hour, when Kellogg observed Mrs. Kinsey coming up fast from the rear, traveling almost straight south at 125 to 130 miles an hour, 50 or 100 feet behind Heitman, where his visibility of her would be difficult, if not impossible. In a flash her plane, coming from the left rear, inside instead of outside the "V" formation to the right, hit Heitman's plane and rode down the fuselage or body until the steel propeller of her plane hit the left wing of his plane, damaging or severing its spars and tearing the fabric therefrom. The two planes made a half turn, hung momentarily in the air, nosed down, and in a slow spiral crashed to the earth, carrying both pilots to their death.

The foregoing evidence appears in testimony adduced by plaintiff, not only in the testimony of Kellogg, but also, except for certain unobserved details, in the testimony of Lane, who was flying in the left rear position in the formation, and by another eye witness, a deputy collector of internal revenue, who was watching the planes and their flight in formation from his home near the airport southeast of the point where the accident occurred, as the planes were headed in formation directly southeast toward him. Photographs, plats, and diagrams also appear in the record, illustrating construction of the planes and the manner of the accident, which was also

demonstrated in the courtroom by witnesses who used model planes, appearing in the record.

From the aforesaid evidence, it could have reasonably been concluded by the jury that Mrs. Kinsey was negligent as alleged by plaintiff, in that she operated her plane in such manner as to endanger the life and property of others; failed to keep a vigilant watch or lookout for other planes; and attempted to pass too closely and overtook the Heitman plane from the left rear, thus failing to give his plane the right-of-way by altering her course to the right or taking other precautions to avoid the collision, all of which proximately caused the accident and death of plaintiff's decedent.

Defendant, for answer traversed by plaintiff, admitted that on October 19, 1947, there was a collision, and that Heitman was a duly qualified and licensed commercial aircraft pilot and flight instructor, flying a Cessna 140 at an altitude of about 1,200 feet from the northwest in a southeasterly direction toward the airport; admitted that Mrs. Kinsey was a duly qualified and licensed private aircraft pilot, and owner of a Cessna 140, which she was flying generally in a southerly direction to the rear of Heitman. Otherwise defendant denied generally, and alleged substantially that the accident and deaths were not the result of any negligence by Mrs. Kinsey, but were proximately caused by specifically alleged negligence of Heitman, who, with full knowledge of the facts, conditions, and elements involved in such a formation flight, assumed the risk thereof and plaintiff could not recover.

The doctrine of assumption of risk and its application was discussed at length by this court in Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041. Whether or not, as an issue, the doctrine had application, if properly submitted in the case at bar, we need not discuss or decide. It is sufficient for us to say that by instructions Nos. 15, 16, and 17, the trial court did submit that issue to the jury in a manner most favorable to

defendant. Those instructions told the jury in substance that if it found from a preponderance of the evidence that Heitman, at the time of planning and engaging in such formation flying, knew or should have known of the dangers naturally inherent in the operation by reason of the conditions and elements then existent, yet nevertheless voluntarily engaged therein, he thereby assumed the risk and could not recover. The instruction did not contain an appropriate qualification that the accident must have resulted from or been proximately caused by such conditions and elements. As an elementary proposition, of course, if Mrs. Kinsey were guilty of negligence proximately causing the accident as alleged by plaintiff and heretofore discussed, then Heitman did not assume the risk thereof. See, Miller v. Mathis, 233 Iowa 221, 8 N. W. 2d 744; Edwards v. Kirk, 227 Iowa 684, 288 N. W. 875; Stout v. Lewis, 11 La. App. 503, 123 So. 346; Marks v. Dorkin, 105 Conn. 521, 136 A. 83, 61 A. L. R. 1224; Hedding v. Pearson, 76 Cal. App. 2d 481, 173 P. 2d 382; Panhandle & S. F. Ry. Co. v. Haywood (Tex. Civ. App.), 227 S. W. 347; Hanaman v. Liberty Trucking Co., 243 Wis. 478, 11 N. W. 2d 130, 149 A. L. R. 640.

The foregoing instructions contained no such qualifications of the rule, and in that regard, the effect of the order erroneously entered by the trial court subsequently granting a new trial, and dismissing plaintiff's action upon the ground that plaintiff's decedent assumed the risk as a matter of law, was to erroneously assume and conclude that plaintiff's decedent assumed the risk of Mrs. Kinsey's negligence. On the other hand, whether or not there was any competent evidence from which a jury could reasonably have concluded that plaintiff's decedent was guilty of contributory negligence, we are not required to decide. It is sufficient for us to say that the issue was submitted to the jury by appropriate instructions and we find no competent evidence in the record which could justify a finding that plaintiff's decedent was guilty of negligence more than slight as a

matter of law, thus barring plaintiff's recovery, as held by the trial court. We therefore conclude that the evidence was amply sufficient to sustain the verdict, and that the trial court erred in holding otherwise.

Defendant argued that instruction No. 11, which among other things purportedly set forth the air traffic rules and regulations applicable in this state, was prejudicially erroneous. Defendant received the benefit of part of the same rules and regulations in instruction No. 14, about which no complaint was made. Concededly, on October 19, 1947, the Nebraska Department of Aeronautics Air Traffic Rules, § VI, p. 59, subdivision 1-a, provided that: "Pilots operating aircraft over the lands and waters of the State of Nebraska shall comply with the rules and regulations of the Civil Aeronautics Board, relating to air traffic." Without dispute, also, the instruction correctly recited the applicable rules and regulations of the Civil Aeronuatics Board specifically authorized by Congress (49 U. S. C. A., § 551) and in force and effect on October 19, 1947. As provided in such rules and regulations, they had application "to aircraft operated anywhere in the United States, including the several States * * *." See, Federal Register, vol. 12, No. 161, p. 5547; Neiswonger v. Goodyear Tire & Rubber Co., 35 F. 2d 761; Sheboygan Airways, Inc., v. Industrial Comm., 209 Wis. 352, 245 N. W. 178.

The statute creating the Nebraska Department of Aeronautics was enacted in 1945 for the purposes, among others, of: "* * * (1) providing for the protection and promotion of safety in aeronautics, (2) cooperating in effecting a uniformity of the laws relating to the development and regulation of aeronautics in the several states, * * * (4) establishing uniform regulations, consistent with federal regulations and those of other states, in order that those engaged in aeronautics of every character may so engage with the least possible restriction, consistent with the safety and the rights of others * * *." Section 3-102, R. S. Supp., 1949.

Sections 3-105 and 3-110, R. S. Supp., 1949, gave the Nebraska Department of Aeronautics the power to adopt rules and regulations not inconsistent with the foregoing purposes, which rules and regulations "shall be kept in conformity, as nearly as may be, with the then current federal legislation governing aeronautics, the regulations duly promulgated thereunder and rules and standards issued from time to time pursuant thereto."

In the light of the foregoing, no question of delegation of power could be involved, as argued by defendant. The Department of Aeronautics simply authoritatively adopted by reference rules and regulations already in existence. The instruction was not prejudicially erroneous.

Instruction No. 12 gave defendant the benefit of the sudden emergency rule. Defendant argued that it was prejudicially erroneous, because as given it absolved defendant only from gross negligence. It will be recalled that defendant alleged contributory negligence as a defense, in which event plaintiff could only recover if plaintiff's decedent was guilty of slight negligence and defendant's decedent was guilty of gross negligence in comparison therewith. The trial court so informed the jury by instruction No. 15, in a manner favorable to defendant. It is elementary that instruction No. 12 must be read in the light of instruction No. 15 and all other instructions given by the court. As a matter of fact, in both instructions Nos. 4 and 5, the trial court specifically cautioned the jury that all the law applicable to the case had not been included in any one instruction but in considering one instruction given, the jury should consider it in the light of and in harmony with all the other instructions given in the case. In the light of the foregoing, and the language of the instruction itself, we conclude that instruction No. 12 had the effect of absolving Mrs. Kinsey not only from negligence but also from gross negligence, if the jury found that she was suddenly confronted with an emergency not brought about by her

own negligence. The instruction, although erroneous, was thus favorable to defendant rather than prejudicially erroneous.

The applicable rule is that: "An instruction will not be held to be prejudicially erroneous merely because of a harmless imperfection which cannot reasonably be said to have confused or misled the jury to the prejudice of the party complaining." Hampton v. State, 148 Neb. 574, 28 N. W. 2d 322. See, also, Pierson v. Jensen, *supra.*

Further: "Where an instruction, though erroneous, is not prejudicially so and cannot by any course of logical reasoning be deemed to have resulted in disadvantage to the complaining party, it should not be allowed to work a reversal." Johnson v. Samuelson, 116 Neb. 297, 216 N. W. 810. By analogy, such an instruction is not legal cause or reason for granting a new trial.

Finally, defendant contended that instruction No. 15 was ambiguous in such manner as to erroneously impose a burden upon defendant. In Chard v. New York Life Ins. Co., 145 Neb. 429, 16 N. W. 2d 858, relied upon by defendant, it was held: "Instructions relating to the burden of proof should not impose a greater burden on either party than the law requires nor relieve a person of the burden imposed by law." The rule thus stated is correct, but it has no application to the situation presented in this case.

The applicable rule is that: "In determining whether there is error in the giving of a sentence in an instruction, it must be considered in connection with the instruction of which it is a part and all other instructions given by the court. The true meaning of instructions is to be determined not from a separate phrase or paragraph, but by considering all that is said on each subject or branch of the case." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175.

That part of instruction No. 15 about which complaint was made, read: "Should you find that Mildred E. Kinsey was guilty of negligence in *one or more of the*

*particulars claimed by the plaintiff, as hereinbefore set forth,* which was the proximate cause of the collision involved herein; and should you further find that the said Heitman, was guilty of negligence *in the particulars claimed by the defendant estate, as hereinbefore set forth,* which was a proximate cause of such collision, then it will be your duty to compare the negligence of said Mildred E. Kinsey with the negligence of said Heitman, in arriving, at your verdict." (Italics supplied.)

Defendant argued that the words "in the particulars claimed by the defendant estate, as hereinbefore set forth," erroneously imposed a burden on defendant. The words "as hereinbefore set forth" obviously referred to instructions Nos. 13 and 14 just previously given. Instruction No. 13 defined contributory negligence and informed the jury that the burden of proof with relation thereto was generally imposed upon defendant. The court then said: "In this case the defendant estate contend that the collision and death of Martin Heitman, were the direct and proximate result of negligence of the said Heitman, contributing thereto, in the following particulars: * * * ." Thereafter followed seven specific allegations of negligence by Heitman qualified by the statement that: "While the burden of proof is upon the defendant estate to establish, by a preponderance of the evidence, that said Martin Heitman was guilty of contributory negligence *in one or more of the particulars set forth* claimed by the defendant estate, yet this issue, as well as all other issues in the case, must be determined from a careful consideration of all the evidence received during the trial." (Italics supplied.) The particular language of instruction No. 15, about which complaint was made, did not impose an additional burden on defendant but properly gave defendant the benefit of all the foregoing statement as distinguished from only a part thereof.

In that connection, also, instruction No. 14 particularly specified the conditions and elements which the jury should take into consideration "In determining whether

or not said Martin Heitman was negligent in *one or more of the particulars claimed by the defendant estate, * * *.*" (Italics supplied.) As a matter of fact, in two other paragraphs of instruction No. 15, the trial court told the jury in effect that in order to recover, plaintiff was required to establish "by a preponderance of the evidence, *each and all of the material allegations of her petition against the defendant estate, as hereinbefore set forth and explained,*" and again required plaintiff to establish "*all the material allegations of her petition*" without any other qualification. (Italics supplied.)

We conclude that the language used in instruction No. 15 did not erroneously impose a burden upon defendant, and was not in any manner prejudicial to defendant.

For the reasons heretofore stated, we conclude that the trial court erroneously vacated the verdict, erroneously granted a new trial, and erroneously dismissed plaintiff's case. Therefore, the judgment should be and hereby is reversed, and the cause is remanded with directions to reinstate the verdict and enter judgment thereon in favor of plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.