HARRIETTE FUSS, APPELLEE, V. GENE WILLIAMSON, APPELLANT.

68 N. W. 2d 139

Filed January 7, 1955. No. 33530.

(525)

*Baylor, Evnen & Baylor,* for appellant.

*Edwin F. Dosek* and *Davis, Healey, Davies & Wilson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Harriette Fuss, brought this action at law in the district court for Lancaster County to recover damages for personal injuries sustained by her due to a collision between an automobile driven by her and an automobile driven by the defendant. The cause was tried to a jury, resulting in a verdict in favor of the defendant. The plaintiff filed a motion for new trial which was sustained. From the order sustaining the motion for new trial, the defendant appeals.

For convenience we will refer to the parties as they were designated in the district court.

The defendant contends that the plaintiff was guilty of negligence and the defendant free of negligence, each as a matter of law, or that, in comparison, the negligence of the plaintiff was more than slight and the negligence of the defendant was less than gross, and accordingly the defendant's motion for directed verdict should have been sustained; and that as a matter of law the plaintiff was guilty of contributory negligence that would bar her right to recover in the instant case. This assignment of error requires an examination of the evidence.

The record discloses that the plaintiff, Harriette Fuss, on February 23, 1952, was using her husband's 1941 Packard four-door sedan. With her were two of her children, Daniel, Jr., age 7, and Marlene Kay, age 5, who were occupying the back seat of the automobile. The plaintiff had driven to Gold and Company's store and parked in front of the store on the south side of O Street, about a quarter of a block west of the intersection of O and Eleventh Streets in Lincoln, Nebraska. She backed the automobile out from in front of the store intending to return to her home. As she did so, she proceeded east on O Street in the south traffic lane and stopped at the traffic light which was red. Her automobile was the first car in line. When the traffic light turned green, she started to make a right turn to go south on Eleventh Street. At that time pedestrians were crossing the cross walk going east and west on O Street. The cross walks were marked, and were about 20 feet in width. She stopped her car immediately north of the cross walk on the south side of O Street. At that time she was in the west, or right hand lane, with her car facing southeast, a little more south than east. The front wheels of the car were about 2 feet north of the north marker for the east-west cross walk on O Street. She waited until the traffic light changed, and started to complete the right turn. She testified that there was a police officer in the center of Eleventh Street who motioned her to proceed. She started to move her car but failed to get completely across the cross walk when the collision occurred between the car she was driving and the defendant's car. When the collision occurred, she was 3 feet south of the south border of the cross walk, completely in the west lane of traffic, proceeding south. The left front fender and bumper of her car were hit by the right rear fender of the defendant's car. When her car was hit, it came to a stop. The defendant's car proceeded about a quarter of a block south on Eleventh

Street after the accident. When his car stopped, it was in the west lane of traffic going south on Eleventh Street, headed directly south. The force of the impact caused the plaintiff to be shaken up, and threw her left arm against the left front door and her stomach into the steering wheel. The plaintiff's two children were thrown to the floor at the time of the impact. She was 3 months pregnant at the time of the accident, and was very nervous after the accident. She testified further that the defendant got out of his car and she got out of the car she was driving, and they met between the two cars. The defendant told her that he did not see her. She fixed the point of impact as 2 feet south of the pedestrian cross walk, in the middle of the dividing line of the two south-bound traffic lanes. She waited for the police officer to come and fill out an accident report, after which she proceeded home.

On cross-examination she testified that when she proceeded east on O Street, the right side of her car was 15 feet from the south side of O Street, and when she stopped at the red traffic light her automobile was about 2 feet from the rear of the cars parked on O Street, in the south lane of traffic. When she drove up to the traffic light, she stopped 2 feet west of the cross walk running north and south on O Street on the west side of Eleventh Street. When the traffic light changed, she proceeded about 30 feet before she stopped her car. Her car was entirely off the north-south cross walk on the west side of Eleventh Street when she came to a stop at the intersection. The front of her car was about 2 feet from the north boundary of the east-west cross walk. The right side of her car was about 14 feet from the west curb of Eleventh Street, and the right front wheel of her car was about 1 foot from the north line of the east-west cross walk. The right front wheel of her car was a little east of the back end of the cars parked diagonally on the west side of Eleventh Street.

She further testified that she did not at any time look to see if there was any car coming from the north, nor did she see any car ahead of her. She did not see any traffic on Eleventh Street. She testified that she would have looked if it had not been for the police officer who was directing traffic. She did not see the defendant's car until the collision occurred. He was in the west lane of traffic when he came to a stop, and the right side of his car was from 1 to 2 feet from the cars parked on the west side of Eleventh Street. The defendant's car did go straight south, but he had to turn to the right to get into the west lane. When the collision occurred, he was in the east lane of the two south-bound lanes on Eleventh Street, and the left front fender of her car was on the white line separating the two lanes for south-bound traffic on Eleventh Street. There is evidence by the plaintiff that when the collision took place the left front wheel of her car was about 23 feet east of the west curb of Eleventh Street. When the collision occurred, she immediately applied her brakes and kept them on until she came to a stop. She was driving 10 miles an hour, and by the use of her brakes could stop her car within the distance of 2 or 3 feet at that speed. She further testified that she believed the defendant said he was going between 15 and 20 miles an hour, but she was not sure; and that he told the police officer he was in second gear and was going between 15 and 20 miles an hour.

It was agreed by the parties that at the time of the accident the intersection of Eleventh and O Streets was a congested area.

The defendant testified that he owned a 1940 Ford coach. On the day in question he drove to the intersection of O and Eleventh Streets. His wife and small son were with him. He intended to let his wife out of the car at the middle, or east, door of Gold's store. As he came up to the traffic light on the north side of O Street,

the light was red. There was a car ahead of him and one on his left. The car ahead of him went straight across the intersection. He was 15 to 20 feet behind that car, and proceeded south across the intersection. When he started his car after the traffic light turned green, he saw a car sitting at an angle at the southwest side of the intersection. At that time he was just past the stop light on the north side of O Street, before he got to the middle of the street. The automobile he saw was at a southeasterly angle, headed southeast. The left front wheel of that car was 14 to 15 feet from the west curb of Eleventh Street. There was nothing interfering in his lane of traffic. He could see straight ahead of him. The back end of the most northerly car parked at Eleventh and O Streets was not more than 1 or 2 feet from the cross walk on the south side of O Street. The cars parked on the west side of Eleventh Street extended out about 15 feet. The defendant further testified that he shifted into second gear and his speed was between 5 and 10 miles an hour. He was 16 to 17 feet from the west curb on Eleventh Street. He saw the plaintiff's car when he first entered the intersection, and the next thing he knew he heard the noise of the fenders colliding. He did not stop quickly—there was no hurry or jamming of brakes. He stopped 25 to 35 feet past the intersection. When he stopped, he got out of his car and walked back and saw the plaintiff's car. There was a pile of dirt 2 or 3 feet inside the north line of the cross walk. When he crossed the intersection there was no police officer there directing traffic. Within 3 to 6 minutes a motorcycle policeman arrived. The defendant testified that when he entered the intersection the plaintiff's car was back 2 or 3 feet, headed to the southeast, more to the east than to the south, at about a 45 degree angle. As he crossed the intersection, he saw nothing in motion except the car in front of him, and the car to his left. He was looking straight ahead. The plain-

tiff told him she did not see him coming. He denied that he ever told anyone his speed was 15 to 20 miles an hour, but that it was 5 to 10 miles an hour. He did not see the plaintiff at the time of the impact. When he crossed the intersection, the left front wheel of the plaintiff's car was flush with the back end of cars parked on the west side of Eleventh Street, about 14 feet from the west curb. The back end of the plaintiff's car was across the north-south cross walk, and the right front side 3 feet distant from the north line of the cross walk. When he saw the plaintiff's car at the time he was on the north side of the intersection of Eleventh and O Streets, he testified that it was not difficult to realize what her subsequent intention was, that she was in the process of planning to complete her turn to the right, and that she was standing still at that point. The plaintiff's car traveled from 3 to 4 feet north of the cross walk to a point approximately 3 feet south of the north edge of the cross walk.

The inspector of police in charge of traffic testified that Eleventh Street south of O Street is 70 feet wide. The center line of Eleventh Street would be 35 feet west of the east curb, or 35 feet east of the west curb. The parking lanes are 10 feet wide. There is angle parking on Eleventh Street. There is a total time of 5 seconds from the time of the flashing green light to the red light on the traffic signal.

One of the officers assigned to direct traffic at Eleventh and O Streets on that day testified that he walked by the intersection and went into a cafe on the east side of Eleventh Street. When he came out of the cafe about 4:05 p. m., his attention was called to the accident, and he directed traffic around the automobiles until the motorcycle officer arrived. He thereafter took his position in the intersection. He did not work traffic before the accident, and no one was doing so when he passed the intersection just prior to the time of the accident.

The motorcycle officer testified that the call reporting the accident was received at 6 minutes after 4 p. m. He arrived at the scene of the accident about 5 minutes thereafter. He saw the plaintiff and the defendant standing near the vehicles. The plaintiff's car was approximately 10 feet south of the intersection, that is, south of the south curb thereof. He did not recall where the defendant's car was located. The plaintiff's car was just behind the parked cars on Eleventh Street. The parked cars took up about 15 feet of space, which would put the plaintiff's car 16 feet from the west curb, headed straight south. The plaintiff told him she did not see the defendant when he started forward from the cross walk. The defendant stated to him that he proceeded across the intersection and saw the plaintiff's car stopped at the intersection waiting for pedestrians to clear the cross walk. As the defendant passed, the plaintiff suddenly started forward and collided with the right rear portion of his car. The plaintiff stated that she was traveling 2 miles an hour before the accident and had just started her car. The defendant told the officer his speed was from 6 to 8 miles an hour at the time. This officer fixed the point of impact at approximately 18 feet east of the west curb and within 1 foot either to the north or south of the white line running across the intersection, that is, the most northern line. He determined the point of impact by the amount of debris left on the pavement which would cover a 2-foot circle.

In considering the defendant's assignment of error as above set out, the rule is: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence."

Moncrief v. Interstate Transit Lines, 129 Neb. 168, 261 N. W. 163. See, also, Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107.

The defendant cites Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673. This case dealt with two vehicles approaching an intersection at the same time. The driver of the Bergendahl car had operated it without brakes. He failed to look to his right for cars approaching or, if he did look, failed to see that which was in plain sight. He failed to yield the right-of-way to defendant's car approaching from the right at approximately the same time. There is no evidence in the instant case that the plaintiff operated her car without brakes. It is true that she failed to look for cars to the right or left, and acted upon what she claimed to be the traffic officer's signal to proceed. The defendant's car was to the rear of the plaintiff's car when she was stopped ready to complete her turn south on Eleventh Street from O Street, and the defendant saw her in that position as he crossed the intersection. The cited case is not in point.

Other cases cited by the defendant in support of this assignment of error such as Troup v. Porter, 126 Neb. 93, 252 N. W. 611; Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790; Trumbley v. Moore, 151 Neb. 780, 39 N. W. 2d 613; and Hammond v. Morris, 147 Neb. 600, 24 N. W. 2d 633, deal with pedestrians illegally or suddenly crossing streets or stepping out into traffic lanes without observing the traffic thereon. These cases are not applicable to the instant case. In the instant case the plaintiff was legally in the intersection, and properly stopped in the lane of traffic in which she had a right to be.

As stated in Huston v. Robinson, 144 Neb. 553, 13 N. W. 2d 885: "* * * we do not hold that the temporary stopping of an automobile on the proper side of a highway for a necessary purpose is negligence in all cases,

the right to stop when the occasion demands being an incident to the right of travel." The plaintiff had a right to stop to let the pedestrian traffic pass.

The plaintiff cites the following case, Halliday v. Raymond, 147 Neb. 179, 22 N. W. 2d 614, to the effect that a pedestrian, having obeyed the traffic signals and entered the traffic cross walk at a street intersection, ordinarily has the duty to look to the left and to the right for approaching traffic, but not to the rear. See, Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114.

"It is the duty of a pedestrian to look to the right and left in crossing an intersection and exercise reasonable care to observe cars coming from either direction. However, he has the right to assume that vehicles approaching from the rear will exercise ordinary care in keeping a lookout for him, and has no duty to maintain a lookout to the rear to avoid a charge of negligence." Johnson v. Griepenstroh, 150 Neb. 126, 33 N. W. 2d 549. See, also, Brenning v. Remington, 136 Neb. 883, 287 N. W. 776.

While the above-cited cases deal with pedestrians crossing intersections, the rule with reference to looking to the rear for approaching cars would be applicable in the instant case.

Where the evidence is conflicting and from the facts and circumstances proved reasonable minds might draw different conclusions concerning any negligence or lack of negligence, as well as comparative and contributory negligence, then the trial court should submit such issues to the jury. See Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757.

We conclude that the defendant's assignment of error that the court should have directed a verdict in his favor cannot be sustained.

The defendant contends that there is in the record no error prejudicial to the plaintiff, and the verdict of the

jury for the defendant and the judgment thereon should be reinstated.

Defendant cites Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, wherein this court said: "If, as in the instant case, the trial court gave no reasons for its decision, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error * * *. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court."

The plaintiff contends that the trial court did not err in sustaining her motion for a new trial; and that the trial court in its instruction No. 1 to the jury submitted certain charges of negligence against the plaintiff contained in the defendant's answer and cross-petition which affected the substantial rights of the plaintiff and resulted in prejudicial error.

In this connection, the trial court instructed the jury as follows: "a. She drove, used and operated said Packard automobile in such a manner as to endanger life, limb, person and property, in such a manner as to endanger or interfere with the lawful traffic or use of the streets and in such a condition as to endanger or interfere with the lawful traffic or use of the streets." It should be noted that the instruction is in the conjunctive for the reason that it provides "* * * and in such a condition as to endanger or interfere with the lawful traffic or use of the streets." It is indicated by the latter part of the instruction that it refers to the condition of the automobile driven by the plaintiff or the condition of the plaintiff driving the automobile. There is no evidence in the record that would remotely indicate that the brakes of the plaintiff's automobile were faulty or that the automobile was not in good mechanical condition. Some reference is made by the defendant to the testimony of a doctor to the effect that the plaintiff was

nervous due to her pregnancy and other events in her life, which led to the conclusion that she was not possessed of the stability of a normal person. We conclude, under the facts shown by the record, that the part of the instruction complained of is prejudicially erroneous.

In "i" of instruction No. 1, the court instructed the jury as follows: "She failed to give any warning that the right of way would not be yielded to the defendant or of her intention to drive into the path of and against the automobile of the defendant."

It is the contention of the plaintiff that she was under no duty to give a warning to the defendant that she was not yielding the right-of-way to him or that she was intending to drive south on Eleventh Street, for the reason that she was driving in a direct course south thereon, or was in such a position as to negotiate the turn to the south on Eleventh Street when the defendant first saw her when he stopped at the north side of the intersection of Eleventh and O Streets. She had no duty to observe to her rear that the defendant was crossing the intersection. The defendant was behind her, and she would be to the right of the defendant in the favored position. The plaintiff's car was not proceeding at such a speed that would require her to forfeit the right-of-way. We believe the giving of the above constituted prejudicial error.

There are other charges of negligence appearing in the answer and cross-petition of the defendant made against the plaintiff upon which the trial court instructed the jury, which fall in the same category as those above pointed out. However, inasmuch as a new trial is necessary, we assume that the trial court will instruct the jury on the proper charges of negligence appearing in the pleadings and supported by evidence on the new trial.

"Where a question of fact that is material to the case is submitted to the jury by the trial court, upon which

there is no evidence to support a finding, it constitutes prejudicial error." Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501.

The court should submit to the jury only such issues as find some support in the evidence, and where an issue is submitted without support in the evidence and is calculated to mislead the jury in the consideration of the facts to the prejudice of the complaining party, the judgment must be reversed. See, Stiefler v. Miller, 120 Neb. 6, 231 N. W. 153; In re Estate of Keup, 145 Neb. 729, 18 N. W. 2d 63.

"It is reversible error for the court to include, in its instructions to the jury, allegations of fact found in the pleadings but which have not been supported by any evidence." Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439.

For the reasons given herein, we conclude that the trial court did not err in granting the plaintiff a new trial, and the judgment of the trial court in doing so should be, and is hereby, affirmed.

AFFIRMED.